Robert A. KEMPER, d/b/a Kemper
Enterprises, Plaintiff,

v.

Irv ROHRICH and Chevrolane,
Inc., Defendants.

No. 79–4064.

United States District Court,
D. Kansas.

Oct. 23, 1980.

Steven J. Rupp and Fred W. Phelps, Topeka, Kan., for plaintiff.

James Nordstrom, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action for fraud and breach of contract. Plaintiff is a Kansas resident. Defendants are citizens of the State of Washington. This case is now before the court on defendants' "renewed" motion for summary judgment. In an order of April 28, 1980, this court denied defendants' original motion for summary judgment because of the meagre state of the record. The court also at that time denied plaintiff's motion for summary judgment on defendants' counterclaim for the same reason. In addition, defendants' motion for costs was denied since it was dependent upon resolution of the summary judgment motion in their favor. Since that order, the deposition of defendant, Irv Rohrich, has been taken and defendants have renewed their motion for summary judgment.

■ The defendants move for summary judgment on the ground that this court lacks personal jurisdiction over the defendants. In addition, the defendants contend that punitive damages cannot be awarded in this case. In the earlier order issued in this case, the court treated all the motions before the court as motions for summary judgment. However, at this time the court feels it is proper to consider the defendants' motion for summary judgment, when based upon an allegation of a lack of personal jurisdiction, as a motion to dismiss. See *Meench v. Raymond Corp.*, 283 F.Supp. 68 (E.D.Penn.1968); 6 *Moore's Federal Practice* ¶ 56.03. There would seem to be no

advantage to the defendants by transforming this motion to dismiss into a motion for summary judgment. Furthermore, there is no bar to the consideration by the court of matters beyond the pleadings when they are presented with a motion to dismiss for lack of jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *Top Form Mills v. Sociedad Nationale Ind., Etc.*, 428 F.Supp. 1237 (S.D.N.Y.1977); 2A *Moore's Federal Practice* ¶ 12.09. Therefore, the court takes defendants' motion for summary judgment as a motion to dismiss for lack of personal jurisdiction.

The critical jurisdictional facts show that in February, 1979, Fred Gallion, an employee of Kemper Enterprises, telephoned Rick Ryan, manager of Chevrolane, Inc., and asked him if he would be interested in the purchase of a 1979 Chevrolet Corvette. Mr. Gallion had previously been employed by Astro World Imports, another used car dealership in Topeka, and had sold cars to Chevrolane in the past. Mr. Ryan was not interested in the Corvette at the time of the call; however, Mr. Ryan later called Mr. Gallion asking whether the car was still available. After some discussion and negotiations over the telephone, the defendants agreed to pay plaintiff $13,250 for the delivery of the car to Washington. The car was delivered and the defendants paid only $5,750, claiming a $7,500 setoff against plaintiff relative to another vehicle transaction. The other transaction was a 1978 agreement in which the defendants had purchased three cars from Astro World Imports. The defendants paid for the cars involved in that business deal but only received two of them. The setoff claimed by the defendants in this case is for the cost of the car they had not received. The defendants assert that the plaintiff led them to believe that Kemper Enterprises and Astro World Imports were one and the same and they have filed a counterclaim requesting that the court acknowledge the validity of the claimed setoff. The plaintiff has alleged in his complaint that the setoff was "wrongfully and unlawfully" claimed because the 1978 transaction was with Bruce Clemmons d/b/a Astro World Imports, an-

other and unrelated used car dealership. The court notes that since January of 1978, defendants have done considerable business with car dealerships in the State of Kansas.

Plaintiff alleges that jurisdiction over the defendants exists pursuant to the Kansas long arm statute: K.S.A. § 60–308. The specific statutory provisions relied upon provide as follows:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state;

(2) The commission of a tortious act within this state;

.    .    .    .    .

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state; "

The plaintiff argues that the defendants "transacted business" in Kansas by having done close to a million dollars worth of business in the state. Further, plaintiff argues that the defendants transacted the very business out of which this litigation arises by telephone with the plaintiff. In addition, the plaintiff makes claims of misrepresentation and fraud by the defendants in this case and therefore, assert that the defendants committed "a tortious act within this state." In the alternative to the tort claim, plaintiff alleges a breach of contract occurred and that the contract was to be performed in part in this state.

Defendants have summarily concluded that this is not a case involving fraud and have argued that jurisdiction does not lie under either K.S.A. § 60–308(b)(1) or (5). Defendants have cited several Kansas cases to support their contention that their activities in Kansas do not amount to the con-. tacts necessary to support in personam jurisdiction. It is undisputed by plaintiff that defendant is not licensed to do business in Kansas; maintains no offices or places of business in Kansas; has no agents or representatives here; and was never physically present in the state with regard to this transaction.

This court has recently had the opportunity to discuss in personam jurisdiction under the Kansas long arm statute in *Thermal Insulation Systems, Inc. v. Ark-Seal, Corp.,* 508 F.Supp. 434 (D.Kan., 1980). This court established that the following analysis is the appropriate one to be followed when considering personal jurisdiction questions:

First, it must be determined whether the defendant's conduct falls within the scope of any of the enumerated provisions of the Kansas long arm statute. Then, it must be determined whether the defendant's contacts with the state of Kansas are sufficient to meet the due process requirements set out in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and further developed in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) and most recently in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Both the statutory and constitutional requirements must be met for this court to assert personal jurisdiction over the defendant.

This court will first look at plaintiff's contention that jurisdiction exists under K.S.A. § 60–308(b)(2). If defendants have committed a tortious act within the state, the conduct falls within the scope of subsection (b)(2). Plaintiff relies upon *J. E. M. Corp. v. McClellan,* 462 F.Supp. 1246 (D.Kan.1978) for their contention that jurisdiction is proper under (b)(2) in the instant case. In *McClellan,* the plaintiff agreed to sell an apartment complex to the defendant McClellan for $310,000, including a quantity of jade valued at $110,000. Plaintiff placed a telephone call to defendant Vogel in Chicago in order to receive an appraised value

for the jade. Vogel was apparently familiar with the jade in question. Plaintiff claimed that Vogel represented over the telephone that the jade was worth as much as McClellan claimed and that the value was increasing. Upon finding the true worth of the jade to be only $15,000, plaintiff brought an action claiming that Vogel intentionally and fraudulently misrepresented the jade's value to mislead the plaintiff and induce the plaintiff to enter into a contract upon the mistaken belief. The issue before the court was whether a fraudulent misrepresentation made from without the jurisdiction and causing tortious injury within the jurisdiction constitutes a "tortious act within the state" under subsection (b)(2). The court in *McClellan* found that it does.

In the instant case, defendants promised to purchase the car in question for the sum of $13,250. Based upon that promise, plaintiff transported the car to Washington. At that time, defendants sent the plaintiff $5,750 in payment for the car. The defendants assert that the $7,500 withheld was for setoff purposes in another transaction. In Kansas, the plaintiff need not prove the ultimate fact of tort liability as a precondition to filing an action and obtaining service under subsection (b)(2). As the court in *McClellan* stated: "This would make the existence of personal jurisdiction dependent upon the outcome of a trial on the merits.... The Kansas court has specifically held that for service to issue under the long arm statute, plaintiff need only make out a prima facie case that a defendant has committed those acts which allegedly give rise to liability." 462 F.Supp. at 1248 (citations omitted).

Defendants have not addressed the issue of whether a fraudulent misrepresentation was made in this case. They have apparently concluded that no fraud is present and that only a breach of contract claim can possibly exist. At this stage of the litigation this court does not share the same certainty that the defendants do. This court feels that the plaintiff has made out a prima facie case of "tortious conduct" and that the defendant has not sufficiently rebutted it. Therefore, the court finds that the plaintiff has made a sufficient showing to establish that defendants' conduct falls within subsection (b)(2).

However, even assuming that no fraud occurred in the case at hand as the defendants conclude, the facts of this action fall squarely within the terms of subsection (b)(5). Subsection (b)(5) permits jurisdiction to be asserted over defendants who enter into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state. Plaintiffs have clearly shown the existence of a contract between the parties in this action. Further, it cannot be logically denied that the contract was to be performed in part in Kansas. By necessity, part of the agreement was performed in Kansas, since the formation of the contract occurred over the telephone and the automobile was shipped from Kansas along with its title. Obviously, the literal terms of the statute are met under the facts of this case.

Having concluded that subsections (b)(2) and (b)(5) apply to the given facts, this court will not pursue an examination of the applicability of subsection (b)(1). This court has thoroughly discussed this provision in its recent opinion, *Thermal Insulation Systems, Inc. v. Ark-Seal Corp., supra*, and simply feels it is not necessary to engage in any discussion concerning this subsection.

Having determined that the defendants' conduct falls within the enumerated provisions of the Kansas long arm statute, the question remains whether, under the evidence, an exercise of such jurisdiction would violate the constitutional guarantee of due process. The appropriate analysis to determine the due process issue was set out in *Thermal Insulation Systems, Inc. v. Ark-Seal Corp., supra*:

> The due process clause of the Fourteenth Amendment of the United States Constitution operates as a limitation on jurisdiction over nonresidents. *Kulko v. Superior Court, supra*, 436 U.S. at 91 [98

S.Ct. at 1696]. Thus, our application of K.S.A. § 60–308(b)(1) must comport with the requirements of due process to be valid. In a recent opinion, *World-Wide Volkswagen Corp. v. Woodson, supra,* the United States Supreme Court reaffirmed the ability of courts to exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. 444 U.S. at 291 [100 S.Ct. at 564]. Under due process analysis, a court must look to the "quality and nature" of the defendant's activity to determine whether it is both "reasonable" and "fair" to require the defendant to conduct his defense in the forum state. *Kulko, supra,* 436 U.S. at 92 [98 S.Ct. at 1696]. In every case there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228 [1239], 2 L.Ed.2d 1283 (1958). Actual physical contacts by the defendant with the forum state are not required by the due process clause. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199 [200], 2 L.Ed.2d 223 (1957); *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977); *Rosedale State Bank and Trust Co., v. Stringer, supra,* 2 Kan. App.2d [331] at 333, 579 P.2d [158] at 160.

Like other tests requiring the determination of reasonableness or fairness, the "minimum contacts" test precludes mechanical application. Instead, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko, supra,* 436 U.S. at 92 [98 S.Ct. at 1697]. Inconvenience to the parties and the interest of the state in providing a forum for the action are also relevant considerations. *Kulko, supra,* 436 U.S. at 93 [98 S.Ct. at 1697]; *J. E. M. Corp. v. McClellan, supra* at 1255; *Pedi Bares, supra,* at 937. The United States Supreme Court in *World-Wide Volkswagen* recently discussed these principles and the concept of "foreseeability" as a criterion for establishing in personam jurisdiction. Although finding foreseeability of injury in the forum is not sufficient for personal jurisdiction under the due process clause, the Court acknowledged that it was not wholly irrelevant. As the Court noted: "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567.

The court in *J. E. M. Corp. v. McClellan, supra,* determined that "the intentional tortious act here causing injury to a resident in this forum in and of itself satisfies the criteria of *International Shoe* on a claim for damages arising from that act." 462 F.Supp. at 1255. [citing *Thorington v. Cash,* 494 F.2d 582, 587 (5th Cir. 1974)] Therefore, we conclude that this court has personal jurisdiction over the defendants because the facts in the record demonstrate a sufficient constitutional basis for the exercise of in personam jurisdiction.

Separate from the tortious act allegations, there are several contacts between the defendants and the State of Kansas to be examined for purposes of determining whether the due process requirements are met as to the claim of jurisdiction under K.S.A. § 60–308(b)(5). The defendants claim that the cases of *Oswalt Industries, Inc. v. Gilmore,* 297 F.Supp. 307 (D.Kan. 1969); *Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir. 1971); *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 (1974) are authority that no jurisdiction exists in the instant case. Rather than discuss each of these cases this court would simply refer the parties to *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977). In *Pedi Bares,* plaintiff was a Kansas seller and defendant was a New York wholesale supplier. Partial payment was made to plaintiff in Kansas, and the goods

were manufactured in Kansas. The defendant attacked the applicability of the long arm statute by claiming that plaintiff was not a Kansas resident and that there was no contact with the forum state. Both of these points were resolved in the plaintiff's favor. In examining the due process questions, the court found that the defendant's contacts with the state of Kansas were sufficient so as not to offend fair play and substantial justice. The purchase order was accepted in Kansas, the goods were manufactured and shipped from Kansas, and partial payment was made in Kansas. Although the court recognized that plaintiff was the initiator of the transaction and that the Kansas contacts mainly involved acts of the plaintiff, defendant did act affirmatively and consequences in Kansas were reasonably foreseeable. Fair play and substantial justice were served because the state has an interest in providing a forum to protect resident manufacturers from breaches of contract, and the relative convenience of the parties was balanced.

■ Defendants in oral argument attempted to distinguish *Pedi Bares* on the ground that no manufacturing took place in Kansas in the instant case. In *Misco-United Supply, supra*, the Kansas Supreme Court denied jurisdiction on due process grounds because of insufficient contacts. One of the several factors mentioned by the Court in supporting its decision was the fact that no manufacturing was being done in Kansas and that basically the plaintiff corporation was acting only as a "clearinghouse for what was essentially an out-of-state transaction." 215 Kan. at 854, 528 P.2d at 1253. The distinction that defendants attempt to draw is not persuasive in the case at hand. While indeed no manufacturing was done in Kansas in the instant case, it was certainly not an instance where the plaintiff was only a "clearing-house" for an out-of-state transaction. The plaintiff in this case possessed a very unique product in Kansas and there can be no argument that the defendants acted affirmatively toward Kansas and with obvious foreseeable consequences in Kansas. Kansas certainly has a manifest interest in protecting its residents against non-residents who breach contracts. *Aviation Data Service, Inc. v. Global Jet Sales, Inc.*, No. 80–1315 (D.Kan. 8/14/80).

In the instant case, the defendants purposely availed themselves of the privilege of doing business with a Kansas resident. They entered into a transaction having an impact on the commerce of this state. By so doing, they invoked the benefits and protections of Kansas' laws and could reasonably foresee that their act would have consequences in Kansas. The fact that no agents of the defendants entered the state is not controlling. While the plaintiff began negotiations with the defendants, the defendants acted affirmatively and voluntarily in them thereafter. The car and the title to the car were shipped from Kansas to the defendants. In addition, the defendants made partial payment for the car in Kansas. It would appear that the convenience of the witnesses in this case seem to be evenly balanced. Lastly, since the defendants have done over a million dollars worth of business in Kansas, it would not appear to entail an insurmountable hardship to require the defendants to conduct its defense of this case in Kansas.

Therefore, this court concludes that in personam jurisdiction over the defendants is proper under the facts of this case under both subsection (b)(2) and (b)(5). Thus, defendants' motion for summary judgment as to lack of jurisdiction is hereby denied.

■ This court now moves to the consideration of whether punitive damages should be allowed in this case. This court has had some difficulty in determining exactly what defendants' motion as to punitive damages actually seeks. The court has no quarrel with the defendants' contention that in Kansas punitive damages are not allowed in a simple breach of contract case. However, as pointed out earlier in this opinion, the defendants have again overlooked the fraud claim made by plaintiff. The defendants simply conclude:

In the instant case, a complete review of the record before the Court at this

point, considering all the record most favorably to plaintiff, does not contain any facts that would substantiate an independent tort or a willful, wanton, and intentional act on behalf of the defendant giving rise to a claim for punitive damages.

The defendants would have the court eliminate the plaintiff's possibility of recovering punitive damages without stating why no tort exists in this case. Rule 7(b)(1) of the Federal Rules of Civil Procedure states in pertinent part:

> "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, *shall state with particularity the grounds therefor*, and shall set forth the relief or order sought." (emphasis added).

If the defendants want to move to dismiss the tort for failure to state a claim, then that involves different considerations than whether punitive damages should be awarded in a breach of contract case. This court will not dismiss this tort claim without giving the opposing party at least an opportunity to respond. Accordingly, the court denies the portion of defendants' motion requesting that punitive damages not be allowed in this action.

Therefore, this court concludes that in personam jurisdiction is proper under the facts of this case. Thus, defendants' renewed motion for summary judgment, which the court has considered as a motion to dismiss for lack of personal jurisdiction, is hereby denied. In addition, defendants' motion requesting that punitive damages not be allowed in this case is hereby denied.

IT IS SO ORDERED.