Richard **BIEDERMAN** and **BRG, Inc.,** Plaintiffs,

v.

**SCHNADER, HARRISON, SIEGAL & LEWIS,** Defendant.

Civ. A. No. 90–CV–2418–O.

United States District Court, D. Kansas.

May 10, 1991.

Dale E. Bennett, Pickell & Bennett, Westwood, Kan., John R. Shank, Jr., Gunn, Jones, Shank & Harman, Gladstone, Mo., for plaintiffs.

Darrell L. Havener, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Thomas E. Ruzicka, Steven B. Moore, Olathe, Kan., for defendant.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. This action was originally filed in the District Court of Johnson County, Kansas, and subsequently removed to this court pursuant

to 28 U.S.C. § 1441. Plaintiffs' claims arise out of a fee dispute regarding defendant law firm's representation of plaintiffs in law suits filed in the United States District Courts for the Eastern District of North Carolina and the Eastern District of Pennsylvania. For the following reasons, the court grants defendant's motion to dismiss.[1]

## FACTS

Plaintiff Richard Biederman is a Kansas resident, and plaintiff BRG, Inc., is a Missouri corporation with its principal place of business located in Overland Park, Kansas. Defendant Schnader, Harrison, Siegal & Lewis (Schnader, Harrison) is a Pennsylvania partnership engaged in the practice of law, with its principal office located in Philadelphia.

Schnader, Harrison's professional relationship with plaintiffs began in 1986 when Thomas Brooks, an attorney representing the plaintiffs, retained Schnader, Harrison to represent Biederman and his other corporations, Big Al's, Inc., and Richard Biederman Associated, Inc., in defense of a suit against them in the United States District Court for the Eastern District of Pennsylvania. All the work involved in that lawsuit was performed in Pennsylvania.

In March 1987, Biederman traveled to Philadelphia to retain defendant to represent him in a dispute with Biederman's franchisor, Hardee's, whose principal offices are located in North Carolina. All the contract negotiations regarding fees took place in Philadelphia. In June 1987, Hardee's filed suit against Biederman and BRG in the United States District Court of North Carolina. Ultimately, Schnader, Harrison expended more than 5000 hours of time litigating the North Carolina action. During the discovery phase of the North Carolina action, Schnader, Harrison attorneys made three visits to Kansas: one in 1987 to review and copy documents; one in October 1988, to attend Biederman's deposition; and one in November 1988, to complete the Biederman deposition. However, the bulk of the work relating to this litigation was performed in Philadelphia and North Carolina.

During the pendency of the North Carolina action and continuing until November 1990, Schnader, Harrison also represented Big Al's East, a Biederman corporation, in a lawsuit pending in Pennsylvania. All the work relating to this litigation was performed in Philadelphia, except for a related bankruptcy proceeding in Houston, Texas.

After Biederman and BRG failed to pay a portion of the fees and expenses that Schnader, Harrison claimed were due in connection with their representation of plaintiffs, a Schnader, Harrison attorney informed plaintiffs that the firm intended to take "all necessary steps" to collect the delinquent fees. Subsequently, on October 23, 1990, Biederman and BRG filed this action seeking a declaratory judgment that Schnader, Harrison had been paid in full for legal services rendered in connection with the North Carolina litigation (Count I) and alleging a breach of contract with respect to the payment of local counsel fees in North Carolina (Count II).[2]

Plaintiffs' complaint alleges in Paragraph 10 that:

> a substantial amount of the work called for under the terms of the contract between plaintiffs and defendants was performed in the State of Kansas such as to require defendant to appear before this honorable court and answer the Petition filed herein.

Defendant disputes this allegation and argues for dismissal for lack of personal jurisdiction on the grounds that defendant's conduct fails to fall within any provision of the Kansas long arm statute and further, fails to satisfy constitutional requirements of due process.

## DISCUSSION

■ In evaluating a motion to dismiss for lack of personal jurisdiction, the court

---

1. Defendant's "Motion to Dismiss for Insufficiency of Service or in the Alternative, to Quash Service of Process" (Doc. #19) is denied as moot.

2. Three days later, and without knowledge of the instant action, Schnader, Harrison filed a lawsuit to collect the fees which is presently pending in the Eastern District of Pennsylvania.

performs a two-step analysis. *Thermal Insulation Sys., Inc. v. Ark–Seal Corp.*, 508 F.Supp. 434, 436 (D.Kan.1980). First, the court must determine whether the defendant's conduct is within a provision of the Kansas long-arm statute, K.S.A. 60–308(b). If so, the court must additionally examine whether an exercise of personal jurisdiction comports with constitutional requirements of due process. *Carrothers Constr. Co., Inc. v. Quality Service and Supply Inc.*, 586 F.Supp. 134, 135 (D.Kan.1984). On these questions, plaintiff bears the burden of making a prima facie showing that statutory and due process requirements have been satisfied. *Id.*

Plaintiffs assert that an exercise of jurisdiction is proper over the defendant under either the "transacting business" or the "entering into a contract" prongs of the Kansas long arm statute. Specifically, K.S.A. 60–308(b)(1) and (5) provide:

Any person ... who ... does any of the acts hereinafter enumerated, thereby submits ... to the jurisdiction of the courts of this state as to any cause of action arising from doing any of these acts:

(1) Transaction of any business within this state;

. . . . .

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.

■ Resolving all doubts in plaintiff's favor, the court finds that plaintiffs have failed to meet their burden to make a prima facie showing that the defendant's conduct falls within either of these provisions. As previously stated, Schnader, Harrison's only "transaction of business" in Kansas involved three brief visits in connection with the North Carolina litigation, one to copy documents and two to attend plaintiff's deposition noticed by Hardee's counsel. Neither in their petition nor in their memorandum in opposition to this motion, have plaintiffs alleged facts to support their contention that this action for declaratory judgment and breach of contract arises from any of these visits to Kansas.

■ With respect to the "express or implied contract" provision of the Kansas long arm statute, K.S.A. 60–308(b)(5), the court observes that the "performance of a contract" required by the statute has been held to be the timely execution of the acts *required by the agreement*, at the location and in the manner stipulated. *Green County Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1449 (D.Kan.1986), citing 17 Am.Jur.2d, *Contracts* § 455 (emphasis supplied). Here, the court finds that the contracts under which Schnader, Harrison agreed to represent plaintiffs in the North Carolina and Pennsylvania litigation fail to satisfy this provision of the long arm statute in that nothing in the contracts contemplated or required Schnader, Harrison to perform any portion of the contracts in Kansas.

Moreover, assuming *arguendo* that the conduct of the defendant did fall within one of the provisions of K.S.A. 60–308(b), the court further finds that the exercise of personal jurisdiction over the defendant would violate due process standards. The key concern under the due process standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In determining if it is fair to subject a nonresident defendant to suit in the forum state, the court must consider the "quality and nature" of the defendant's activities. *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). Moreover, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citations omitted). "The unilateral activity of those who claim some relationship with a nonresident defendant

cannot satisfy the requirement of contact with the forum State." *Id.*[3]

As stated previously, plaintiff alleges the following contacts to be sufficient to support jurisdiction: In 1987, a Schnader, Harrison attorney made one trip to Kansas to review and copy documents. Subsequently, in October 1988, a Schnader, Harrison attorney traveled to Kansas to attend Biederman's deposition and again in November 1988, to complete the deposition. Both depositions were noticed by Hardee's counsel and, otherwise, none of the legal work was performed in Kansas. Further, plaintiffs assert that, in connection with the fee arrangement, defendant mailed letters and placed telephone calls to Kansas and plaintiff Biederman mailed checks to defendant from his Kansas office on accounts drawn by Kansas banks.

Plaintiffs contend these contacts are sufficient to maintain jurisdiction over Schnader, Harrison because by entering into a contract, or ongoing relationship, to represent a Kansas plaintiff, it was foreseeable that Schnader, Harrison would (1) travel to Kansas and (2) perform at least part of the contract in Kansas. The court disagrees and notes that these same arguments were rejected by the Eighth Circuit in *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir.1987), a case with strong similarities to the instant case. In *Austad,* the plaintiff, a South Dakota resident, brought an action against a New York law firm, Pennie & Edmonds, in South Dakota. Pennie & Edmonds was a New York partnership with its principal offices located in New York. No attorney in the firm was licensed to practice law in South Dakota, nor had the firm ever advertised its services or solicited clients there.

The cause of action in *Austad* arose out of Pennie & Edmonds' representation of Austad in a Maryland lawsuit. As in the instant case, the firm's representation was arranged through the efforts of a third party. During the discovery stage, Pennie & Edmonds sent an associate and a law clerk to South Dakota to review and copy documents, and to gather information to answer interrogatories. Subsequently, the firm prepared an updated estimate of anticipated costs. Faced with higher than expected costs, Austad informed the law firm that it no longer desired representation and then settled the underlying suit. By that time Austad had incurred significant legal fees. When Pennie & Edmonds sought payment, Austad refused and filed an action in South Dakota alleging breach of fiduciary duty and negligence in connection with the Maryland litigation.

Pennie & Edmonds moved to dismiss for lack of personal jurisdiction and the District Court of South Dakota granted the motion. On appeal, the Eighth Circuit affirmed, emphasizing that the only contacts the law firm had with South Dakota were a three-day visit during discovery, phone calls to its client, courier services, monthly billings mailed to South Dakota, and checks paid to the law firm drawn on a South Dakota bank. Rejecting Austad's claim that these contacts constituted an "ongoing attorney-client relationship sufficient to warrant a finding of personal jurisdiction," the court stated

> Pennie & Edmonds does not maintain an office in South Dakota nor do any of its attorneys reside there or maintain a license to practice law there. Pennie & Edmonds has never advertised or solicited business in South Dakota. Further, Pennie & Edmonds did not actively seek out Austad as a client. Rather, the representation ... was arranged through [a

---

**3.** The Tenth Circuit appears to have recently endorsed the following three-part test for specific jurisdiction:

> (1) The non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

> (2) The claim must be one which arises out of or results from the defendant's forum related activities.

> (3) Exercise of jurisdiction must be reasonable.

*Rambo v. American Southern Insurance Company,* 839 F.2d 1415, 1419 n. 6 (10th Cir.1988) (quoting *Data Disk, Inc. v. Systems Technology Associated, Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977)).

third party].... Finally, the actions giving rise to this lawsuit took place in Maryland and not in South Dakota. In short, Pennie & Edmonds only "substantial connection" with South Dakota was its representation of a South Dakota corporation in connection with litigation taking place wholly outside South Dakota. Based on these facts, we do not believe a showing has been made that Pennie & Edmonds purposefully availed itself of the benefits and protections of the laws of South Dakota.

*Id.* at 226–27.

As in *Austad,* the court finds that, here, defendant's brief visits to Kansas during discovery, phone calls and letters to Kansas, and checks received by defendant from a Kansas plaintiff are not sufficient contacts to support an exercise by the court of personal jurisdiction over this defendant.[4] First, the court finds that since the instant cause of action arose out of defendant's representation of a Kansas resident in litigation taking place in other forums, the exercise of jurisdiction over the defendants would be neither fair nor reasonable. *See Ashai Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1976).

Second, the court cannot find any indication from the alleged contacts that the defendant "purposefully avail[ed] [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1240 (1958). The "purposeful availment" requirement exists to prevent a nonresident defendant from being haled into the forum state solely as a result of "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The court concludes that here, where the plaintiff, on the advice of a third party, traveled to Pennsylvania to solicit the services of Schnader, Harrison on behalf of himself and his corporations, and where the defendant's services were rendered primarily in states other than Kansas, the contacts with Kansas are so attenuated and minimal that an assertion of jurisdiction over the defendant by this court would "offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Accordingly, the court grants defendant's motion to dismiss.[5]

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docs. # 3, 10) is granted.

---

**4.** While in some cases telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction, the ordinary use of the mail and telephones to the forum state will not meet due process standards unless it forms a substantial connection with the forum. *See Rambo, supra,* 839 F.2d at 1418 and cases cited therein.

**5.** Because the court has granted defendant's motion to dismiss on jurisdictional grounds, the court does not reach the issue of whether the court should refuse jurisdiction of Count I, the declaratory judgment action, pursuant to 28 U.S.C. § 2201.