**DAZEY CORPORATION, Plaintiff,**

v.

**Jeffrey WOLFMAN, Defendant.**

**Civil Action No. 96–2103–GTV.**

United States District Court,
D. Kansas.

Nov. 19, 1996.

Margaret Gallagher Hague, Paul D. Sinclair, Sinclair, Sawyer, Thompson, Haynes & Cowing, P.C., Kansas City, MO, for Dazey Corporation.

Gordon E. Wells, Jr., Lathrop & Gage L.C., Overland Park, KS, for Jeffrey Wolfman.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This diversity case is before the court upon defendant Jeffrey Wolfman's motion to dismiss for lack of personal jurisdiction (Doc. 21). For the reasons stated below, the motion is denied.

### Background

The complaint, affidavits, and other submitted documents provide the basis for the following facts and allegations. Dazey Corporation, a Kansas corporation located in New Century, Kansas, manufactures small household appliances. In early 1995, Dazey consulted with Michael J. Siegel of VITT Media to arrange a barter of its merchandise in exchange for broadcast and print media. Siegel eventually selected Broadcast Marketing Corporation (Broadcast) as Dazey's barter source. Jeffrey Wolfman, a New Jersey resident, is president and sole shareholder of Broadcast. Broadcast's offices and employees are located in New York.

Siegel, who lives and works in New York, initiated contact with Broadcast and Wolfman concerning Dazey's need for advertising and need to liquidate inventory. Neither Wolfman nor Broadcast had had any prior contact with Dazey. Negotiations between Siegel, on behalf of Dazey, and Wolfman, on behalf of Broadcast, commenced in April 1995. During the ensuing negotiations, Lewis A. Mendelson, executive vice-president of Dazey, had one or two telephone conversa-

tions with Wolfman from Dazey's office in Kansas. The two discussed Dazey's media requirements, specific media schedules, restrictions on the barter of certain merchandise, the value of the merchandise that would be shipped, and the price term in the contract. The value of the goods determined the amount of media credit Dazey would receive in exchange for the goods shipped.

Under the terms negotiated, Broadcast would direct Dazey to ship appliances to specified wholesalers or retailers, who would pay Broadcast for the goods received. In exchange for the shipped goods, Broadcast through Wolfman expressly promised that Dazey would receive broadcast and print advertising.

Broadcast created the form of contract used. Wolfman sent the proposed contract by facsimile to Mendelson in Kansas. On June 12, 1995, Mendelson executed the contract on behalf of Dazey and mailed it to Wolfman's attention at Broadcast. Wolfman countersigned the contract and on June 16, 1995, mailed the final copy along with a cover letter to Mendelson.

On June 19, 1995, an involuntary petition in bankruptcy was filed against Broadcast. On that same date, Wolfman directed Broadcast to send a purchase order to Dazey in which Dazey was directed to ship goods valued at $427,400. Dazey shipped the goods as directed.

On July 5, 1995, Broadcast filed a voluntary Chapter 11 petition for bankruptcy, listing almost $2.5 million in assets and more than $6 million in debts. On July 31, 1995, the bankruptcy court entered an order for relief under Chapter 11.

On September 5, 1995, Broadcast sent purchase orders Wolfman had signed to Dazey in which Dazey was directed to ship goods valued at $353,800. Dazey shipped the goods as directed. In response to the June and September purchase orders, Dazey shipped a total of $781,200 in goods.

On October 25, 1995, Dazey learned that Broadcast was in a bankruptcy proceeding. On that date, Wolfman told Mendelson that during June 1995, Broadcast was "in the process of planning a Chapter 11 when an involuntary Chapter 7 took place unexpectedly." (Doc. 1, Complaint, ¶ 25.)

Since the bankruptcy proceeding, Dazey has received media credits worth approximately $135,000. With regard to print, Dazey's advertising has been allocated to a highly restrictive list of publications with inferior placement in those publications. Contrary to the letter agreement, Dazey must pay cash for one-half of the cost of the print advertising. Additionally, Dazey has been unable to obtain television or radio media advertising.

On March 1, 1996, Dazey filed suit against Wolfman, alleging fraudulent promise of future events and fraud by silence, both Kansas common-law torts. Providing documentation of Broadcast's financial history, Dazey claims Wolfman misrepresented Broadcast's ability to fulfill its contractual obligations. Dazey seeks actual damages in the amount of $781,200 and punitive damages.

Wolfman subsequently filed the pending motion to dismiss for want of personal jurisdiction. The defendant contends dismissal is proper because he has never been a resident of Kansas; has never set foot in Kansas; and has never owned, used, or possessed property in Kansas. He maintains that he has never transacted business in Kansas and has never engaged in solicitation or service activities within Kansas. He asserts that no products, materials, or things he has processed, serviced or manufactured have been used or consumed within Kansas during the ordinary course of trade or use. Wolfman declares that he has never committed a tort in Kansas.

*Legal Standards*

A party invoking the jurisdiction of the federal courts has the burden of proving that federal jurisdiction exists. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995); *Raytheon Aircraft Credit Corp. v. Pal Air Int'l, Inc.,* 923 F.Supp. 1408, 1414 (D.Kan. 1996). In a diversity action, the federal court determines whether it has personal jurisdiction over a nonresident defendant under the law of the forum state, Kansas. *Rambo v. American S. Ins. Co.,* 839 F.2d 1415, 1416 (10th Cir.1988); *Raytheon Air-*

*craft Credit Corp.,* 923 F.Supp. at 1414; *Slawson v. Hair,* 716 F.Supp. 1373, 1375 (D.Kan.1989). An analysis of personal jurisdiction involves a two-prong test. Under the first prong, the defendant's conduct must fall within the Kansas Long–Arm Statute, K.S.A. § 60–308(b). The second prong of the test concerns whether a defendant has had sufficient minimum contacts with the forum state to comport with due process requirements. *Key Indus., Inc. v. O'Doski, Sellers & Clark, Inc.,* 872 F.Supp. 858, 861 (D.Kan.1994); *Slawson,* 716 F.Supp. at 1375; *see International Shoe Co. v. State of Wash.,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945).

▇▇▇ In opposing a motion to dismiss for lack of personal jurisdiction filed before trial, a plaintiff bears the burden of making a prima facie showing that these statutory and due process requirements are satisfied in order to permit the court to exercise personal jurisdiction over the defendant. *Wenz,* 55 F.3d at 1505; *Carrothers Constr. Co. v. Quality Serv. & Supply, Inc.,* 586 F.Supp. 134, 135–36 (D.Kan.1984). The parties may submit affidavits and other documentary evidence for the court's consideration. *Thermal Insulation Sys., Inc. v. Ark–Seal Corp.,* 508 F.Supp. 434, 437 (D.Kan.1980). Well-pled facts in the complaint, as distinguished from mere conclusory allegations, are accepted as true to the extent the defendant's affidavits do not controvert the allegations. *Wenz,* 55 F.3d at 1505; *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984); *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). If the parties submit conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the defendant's contrary presentation. *Behagen,* 744 F.2d at 733. The plaintiff is entitled to the benefit of any factual doubts. *Ammon v. Kaplow,* 468 F.Supp. 1304, 1309 (D.Kan.1979).

### Kansas Long–Arm Statute

▇▇▇ Dazey argues that Wolfman's conduct falls within the purview of subsection (b)(2) of the Kansas Long–Arm Statute, which provides:

(b) *Submitting to jurisdiction process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

. . . . .

(2) commission of a tortious act within this state.

K.S.A. § 60–308(b)(2). Dazey asserts that, in order to satisfy subsection (b)(2), a plaintiff only need establish that the defendant committed fraudulent acts causing injury in Kansas. Dazey notes that courts have not construed subsection (b)(2) to require the presence of the defendant in Kansas or the commission of the alleged tortious act in Kansas. *See Blue Moon Licensing, Inc. v. Gregorek,* 906 F.Supp. 603, 605 (D.Kan.1995) (citing *Ling v. Jan's Liquors,* 237 Kan. 629, 633, 703 P.2d 731 (1985)) ("Although [the defendant] has never done business in Kansas, [its] conduct allegedly caused injury ... in Kansas and, therefore, the alleged tort is deemed to have occurred in Kansas."); *see also Wegerer v. First Commodity Corp.,* 744 F.2d 719 (10th Cir.1984) (applying Kansas law); *Kemper v. Rohrich,* 508 F.Supp. 444 (D.Kan.1980); *J.E.M. Corp. v. McClellan,* 462 F.Supp. 1246 (D.Kan.1978). Dazey maintains it has established a prima facie case that Wolfman made fraudulent statements that injured the plaintiff in Kansas.

Wolfman disputes the automatic assertion of personal jurisdiction under subsection (b)(2) based upon the alleged commission of fraudulent activity outside Kansas causing injury within Kansas. In support, the defendant relies upon *Blue Beacon Int'l, Inc. v. American Truck Washes, Inc.,* 866 F.Supp. 485 (D.Kan.1994), in which Judge Saffels concluded that the defendant was not subject to jurisdiction under subsection (b)(2) because the plaintiff failed to establish that the defendant engaged in even one single, purposeful

act and because if harm had occurred, that harm occurred outside the forum state.[1]

Other District of Kansas decisions have not required a purposeful act. For example, in *Continental Am. Corp. v. First Nat'l Bank*, No. 93–1415, 1994 WL 326771, *2 (D.Kan. Jun. 22, 1994), Judge Belot noted:

> [F]ederal district court opinions have construed 60–308(b)(2) broadly to encompass economic injuries sustained by a Kansas corporation as a result of an out-of-state tort. This view is subject to serious challenge. As the [defendant] points out, extending the long-arm statute in this manner allows courts to exercise jurisdiction over all out-of-state defendants whenever the plaintiff resides in the forum state and claims a financial loss.
>
> ... In light of the broad interpretation the Kansas Supreme Court has given 60–308(b)(2), however, the court concludes the economic injury sustained by [the plaintiff] is sufficient to bring the [defendant's] actions within the purview of the Kansas long-arm statute.

(Internal citations omitted); *see Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir.1990) ("no indication of any retreat under Kansas law from the broad reading of the tortious act section of the state long-arm statute as put forth in *Ling*"); *see also Head v. Platte County, Mo.*, 242 Kan. 442, 447, 749 P.2d 6 (1988) ("K.S.A. § 60–308(b)(2) ... allows a plaintiff to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside Kansas").

Under the standard discussed in *Continental Am. Corp* and the cases Dazey cites, the court concludes it is proper to invoke jurisdiction over Wolfman pursuant to K.S.A. § 60–308(b)(2). The plaintiff's financial loss, allegedly caused by the defendant's fraudulent conduct, occurred in Kansas. *See Corinthian Mortgage Corp. v. First Sec. Mortgage Co.*, 716 F.Supp. 527, 529 (D.Kan.1989) (alleged financial injury suffered at corporation's principal place of business). Even under the *Blue Beacon* standard, Wolfman is subject to personal jurisdiction. In addition to the financial loss within the forum, the defendant engaged in purposeful acts, such as the telephone call(s) with Mendelson in Kansas, transmitting the contract to Kansas, and directing the purchase orders he signed to Kansas. Dazey also asserts that Wolfman's purposeful acts include misrepresenting Broadcast's financial ability to perform its contractual obligations.

### Due Process

Dazey argues that the commission of an intentional tort causing injury in Kansas satisfies due process. The plaintiff relies upon *J.E.M. Corp.*, in which the defendant's only contact with the forum was the plaintiff's telephone call to the nonresident defendant concerning the value of jade with which the defendant allegedly was familiar. Judge Theis concluded that "[t]he intentional tortious act here causing injury to a resident in this forum in and of itself satisfies the criteria of *International Shoe* on a claim for damages arising from that act." 462 F.Supp. at 1255; *see, e.g., Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933 (10th Cir. 1977) (due process minimum contacts satisfied; although plaintiff initiated transaction, purchase order accepted in Kansas, goods manufactured in and shipped from Kansas, and partial payment made in Kansas); *Kemper*, 508 F.Supp. at 448–49 (Kansas plaintiff initiated negotiations with nonresident defendants for sale of car; defendants agreed to pay certain price for car upon delivery to Washington; after car delivered, defendants claimed set off and did not pay full price; jurisdiction asserted over defendants).

Wolfman counters that his contacts with Kansas are "extremely tenuous" and do not support exercising personal jurisdiction over him. For support, the defendant relies upon *Biederman v. Schnader, Harrison, Siegal & Lewis*, 765 F.Supp. 1057 (D.Kan.1991), and *Marcus Food Co. v. Crown Meat Co., Inc.*, 779 F.Supp. 514 (D.Kan.1991).

---

1. Wolfman also contends that the complaint does not allege sufficient facts regarding his alleged fraudulent conduct to support jurisdiction under the Kansas Long–Arm Statute. The court disagrees.

The *Biederman* defendant's contacts included "brief visits to Kansas during discovery, phone calls and letters to Kansas, and checks received by defendant from a Kansas plaintiff." 765 F.Supp. at 1061. Wolfman emphasizes Judge O'Connor's statement that "[w]hile in some cases telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction, the ordinary use of the mail and telephones to the forum state will not meet due process standards unless it forms a substantial connection with the forum." *Id.* at 1061 n. 4 (D.Kan.1991) (citing *Rambo*, 839 F.2d at 1418).

In *Marcus Food Co.*, a nonresident agent of the plaintiff Kansas corporation initiated contact with the defendant New Jersey corporation, a wholesale distributor of meat. The agent placed two purchase orders for meat to be delivered to a warehouse in New Jersey and the bill to be sent to the plaintiff in Kansas. The meat was not delivered, and the plaintiff sued for breach of contract. Judge Theis concluded that exercising personal jurisdiction over the defendant did not comport with the requirements of due process, reasoning:

> The defendant has not entered Kansas, did not initiate negotiations with a Kansas resident, did not engage in contract negotiations via mail, telephone or other contacts with Kansas, and did not agree to deliver the goods to Kansas.... Plaintiff's New Jersey agent made all the contacts with defendant in New Jersey.... The bill was to be sent to Kansas and pay was to be made from Kansas. Agents of the plaintiff placed telephone calls to [the defendant] to discuss the delivery of the meat. However, discounting the contacts that resulted from the plaintiff's unilateral conduct, there are no voluntary contacts by the defendant with the forum state.

779 F.Supp. at 521.

The cornerstone of due process analysis is whether "the defendant's conduct and con-

nection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Tenth Circuit Court of Appeals follows a three-part test to determine whether a nonresident's contacts with the forum comport with the principles of due process:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Taylor,* 912 F.2d at 432; *Rambo,* 839 F.2d at 1419 n. 6; *see Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317, 320 (D.Kan.1995). Examining purposeful availment ensures that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). Factors to ascertain reasonableness include "the burden on the defendant," the interest of the forum state in adjudicating the matter, the interest of the plaintiff in obtaining relief, and the interest of the judicial system in securing efficient resolution of disputes, and the states' shared interest in furthering social policies. *Id.* at 477, 105 S.Ct. at 2184.

Construing the facts most favorable to the plaintiff, Wolfman initiated one or two telephone calls to Kansas to negotiate details of the contract into which Broadcast and Dazey subsequently entered.[2] Wolfman signed the

---

**2.** Wolfman argues that the only time frame relevant to the plaintiff's claims is the "inducement or negotiation" period. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Cooperative,* 812 F.Supp. 1139, 1147 (D.Kan.1993) ("To provide a basis for specific jurisdiction, the cause of action must arise from the contacts in question."), *aff'd,*

17 F.3d 1302 (10th Cir.1994). According to the defendant, the only contact during that time frame was one telephone call between himself and Mendelson. Wolfman implies that Mendelson initiated the call because there is no evidence that the defendant did.

contract and transmitted it to Kansas. Wolfman signed and sent purchase orders to Kansas. Wolfman had minimum contacts with the state of Kansas, and these contacts were the result of and pursuant to Broadcast's decision to enter into a contract with a Kansas-based corporation to be performed partially in Kansas. The goods were manufactured in and shipped from Kansas. The defendant purposefully directed activities toward the forum. *See Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 780, 740 P.2d 1089 (1987) (citing *Burger King Corp.,* 471 U.S. 462, 105 S.Ct. 2174) ("Where an individual purposefully directs his activities toward forum residents or has purposefully derived benefits from their interstate activities, a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

The plaintiff's claims arise out of or result from Wolfman's forum-related activities. The plaintiff's claims are based upon Wolfman's alleged fraudulent representation of Broadcast's ability to satisfy its contractual obligations.

Asserting jurisdiction over Wolfman is reasonable. In *Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982) (citations omitted), the Tenth Circuit "recognize[d] that modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications" and "that defending a suit in a foreign jurisdiction is not as burdensome as in the past." Additionally, "[a] state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." *Keeton v. Hustler Magazine,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (internal quotation marks and citations omitted). Kansas also has a particular interest in this case inasmuch as the case involves Kansas law; the plaintiff alleges violations of Kansas common-law

torts. Dazey "has a compelling interest in obtaining effective relief in a convenient forum, particularly where the plaintiff is the alleged victim of tortious activity." *Slawson,* 716 F.Supp. at 1378.

Further, the cases upon which Wolfman relies are distinguishable. In *Biederman,* the cause of action did not arise out of the defendant's contacts with Kansas. The Kansas plaintiffs sued a Pennsylvania law firm over fees arising out of the defendant's representation of the plaintiffs in suits filed in other forums. Here, in contrast to *Marcus Food Co.,* the nonresident defendant's contact with the plaintiff was not solely through the plaintiff's agent. Wolfman made voluntary contacts with Kansas.

For the reasons stated, the court finds that asserting personal jurisdiction over Wolfman comports with the principles of due process.

### *Fiduciary Shield Doctrine*

 Wolfman argues that even if the long-arm statute and due process are satisfied, the fiduciary shield doctrine precludes exercising jurisdiction over him. Stated succinctly, "the fiduciary shield doctrine holds that jurisdiction over individual officers of a corporation is not obtained merely by accomplishing jurisdiction over the corporation." *Ceva Lab., Inc. v. Wilson,* No. 88–2609, 1989 WL 106719, *2 (D.Kan. Aug. 21, 1989) (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1527 (10th Cir. 1987)).

" 'However there are circumstances under which nonresident individuals can be subjected to long-arm jurisdiction because of the individual's role with respect to a corporation,' including 'use of the corporate entity in promoting injustice or fraud.' " *Murray v. Sevier,* 156 F.R.D. 235, 251 (D.Kan.1994) (quoting *Stucky v. Health Care Prod., Inc.,* No. 90–1562, 1992 WL 124832, # 2 (D.Kan.

Dazey has not brought a claim for fraud in the inducement; therefore, the court deems the other contacts relevant. *See OMI Holdings, Inc. v. Howell,* 260 Kan. 305, 344–345, 918 P.2d 1274 (1996) (elements of fraud by silence); *All West Pet Supply Co v. Hill's Pet Prod. Div., Colgate–Palmolive Co.,* 840 F.Supp. 1426, 1430 n. 5 (D.Kan.1993) (citing *Edwards v. Phillips Petrole-*

*um Co.,* 187 Kan. 656, 360 P.2d 23, 26–27 (1961)) (elements of fraudulent promise of future events). The facts must be viewed in the light most favorable to the plaintiff, which suggests one or two telephone calls between Wolfman and Mendelson. Additionally, any factual doubts regarding who initiated the call must be resolved in the plaintiff's favor.

May 26, 1992)). Here, Dazey alleges that Wolfman fraudulently misrepresented Broadcast's ability to fulfill its contractual obligations. Additionally, Dazey is not seeking to assert jurisdiction over Wolfman simply by virtue of jurisdiction over Broadcast. Rather, Dazey asserts jurisdiction over Wolfman based upon torts the defendant is alleged to have committed. Therefore, the fiduciary shield doctrine does not preclude asserting jurisdiction over Wolfman under § 60–308(b)(2) of the Kansas Long–Arm Statute. *See Ceva Lab., Inc.*, 1989 WL 106719, at 2.

Regarding due process, in *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984), the Supreme Court held that "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996). The *Calder* Court stated that employee status does not insulate employees from jurisdiction. "Each defendant's contacts with the forum state must be assessed individually." *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487. In *Calder*, the nonresident defendant employees were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them [was] proper on that basis." *Id.* For the reasons previously stated in the due process analysis, the plaintiff has established that Wolfman had sufficient contacts with Kansas.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Jeffrey Wolfman's motion to dismiss for lack of personal jurisdiction (Doc. 21) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**