**MAVERICK PAPER COMPANY,** Plaintiff,

v.

**OMAHA PAPER COMPANY, INC., et al., Defendants.**

No. CIV. A. 98–2196–KHV.

United States District Court, D. Kansas.

Aug. 12, 1998.

Timothy M. O'Brien, Shook, Hardy & Bacon L.L.P., Overland Park, KS, Edward T. Wahl, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for Maverick Paper Co.

Tim S. Haverty, Tamra Wilson Setser, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, for Omaha Paper Co., Inc., David Powell, Robert Powell, Kevin Powell.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on *Defendant David Powell's Motion To Dismiss* (Doc. # 9) filed June 5, 1998, and his *Motion To Strike Affidavit of Ron Litton* (Doc. # 21) filed July 22, 1998. Powell asks the Court to dismiss plaintiff's claim against him for lack of personal jurisdiction and to strike the opposing affidavit of Litton.

### I. *Legal Standard*

The Court may consider a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) on the basis of affidavits and other written material. *See Behagen v. Amateur Basketball Ass'n of U.S.A,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85

L.Ed.2d 171 (1985). When the Court evaluates a motion to dismiss without the aid of an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdiction to avoid dismissal. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995). Well pled facts in plaintiff's complaint, as distinguished from conclusory allegations, must be taken as true to the extent they are not controverted by defendants' affidavits, and factual contradictions must be resolved in plaintiff's favor. *Id.; Behagen,* 744 F.2d at 733.

## II. *Factual Background*

Maverick Paper Company is a Kansas corporation with its principal place of business in Lenexa, Kansas. David Powell ["Powell"] is Chairman of the Board of Omaha Paper Company, a Nebraska corporation which distributes paper products to customers in the Midwest. Defendant's sons, Robert Powell and Kevin Powell, serve as officers and directors for Omaha Paper.

In 1996, Omaha Paper allegedly attempted to purchase Maverick and thereby establish itself in the Kansas City Market. Omaha Paper allegedly made claims that it could deliver several key franchise rights to promote Maverick's growth. Maverick avers that in March of 1997, at a meeting at Kansas City Omaha Paper agreed to purchase 25 percent of the outstanding stock of Maverick, to obtain certain franchise rights, and to supply paper products to Maverick at its cost plus transportation. Maverick decided to forgo other business strategies and options and signed the agreement. As specified in the agreement, Kevin Powell and Robert Powell purchased stock in Maverick and began serving on its Board of Directors.

Maverick claims that Omaha Paper breached the contract by failing to acquire the promised franchise rights and by neglecting to supply paper products to it. Maverick contends that Powell played an instrumental role in Omaha Paper's breach, in that he opposed the purchase agreement, pressured his sons not to honor their commitments, and influenced paper manufacturers to avoid transactions with Maverick.

In support of its allegations plaintiff offers the sworn affidavit of Ronald Litton, Maverick's president. Litton claims that in October 1996, Powell attended a business meeting in Kansas to discuss a possible business agreement involving Omaha Paper and Maverick. Litton states that after the parties signed the agreement, Powell personally told him (at a meeting in Nebraska) that he intended to direct his sons not to pursue the franchise rights that Omaha Paper had promised to obtain. Litton further asserts that during a telephone conversation, Robert Powell told him that Powell was responsible for Omaha Paper's refusal to perform under the purchase agreement. On October 10, 1997, Powell mailed new credit terms to Robert Hatch, a Maverick shareholder who lives in Kansas City, Missouri. Litton claims that on October 23, 1997, when Hatch had not accepted Powell's demands for new credit terms, Powell notified Maverick by mail that Omaha Paper was placing it on COD status.

Maverick claims that through the actions described in Litton's affidavit, Powell tortiously interfered with the contract between Omaha Paper and Maverick and that as a result of his active opposition, Omaha Paper breached that contract. Maverick claims that due to Omaha Paper's breach and Powell's decision to transfer it to COD status, it is unable to compete in the paper business; that it has suffered lost profits in Kansas; and that it will continue to do so because Omaha Paper has done little in furtherance of the purchase agreement.

## III. *Analysis*

The issue is whether Powell's contacts with the State of Kansas—his pre-contractual visit to Kansas, his letter of October 10, 1997, and his interference with a contract between Omaha Paper and a Kansas resident—are sufficient for the exercise of personal jurisdiction under the Kansas Long–Arm Statute, K.S.A. § 60–308(b)(2), and the Due Process Clause of the Constitution. The Court answers that question in the affirmative.

### i. Motion to Strike

 First, the Court must consider defendant's motion to strike Litton's affidavit. Defendant argues that Litton's affidavit relies on inadmissible hearsay and legal conclusions. The Court agrees with the Honorable Judge John W. Lungstrum that it is impossi-

ble to strike a submitted affidavit and that defendant's motion to strike should therefore be overruled. If a submitted affidavit contains relevant admissible material, then the Court may rely on it in making its rulings. If the affidavit contains material that is not admissible or relevant, the Court will ignore it. *Nelson v. Allstate Ins. Co.*, 1993 WL 105120 at *6 (D.Kan.).

### ii. Motion to Dismiss

The Court proceeds to consider defendant's motion to dismiss for lack of personal jurisdiction. Defendant contends that his contacts with the State of Kansas are not sufficient to support personal jurisdiction consistent with the requirements of due process. Defendant proffers two arguments in support of his motion. First, defendant argues that plaintiff complains of no "purposeful" act which can establish minimum contacts with Kansas, because plaintiff's allegations are speculative and without factual basis. Second, defendant argues that given his limited contacts with Kansas, the exercise of jurisdiction over him would violate due process.

Plaintiff encourages the Court to establish personal jurisdiction because defendant's conduct satisfies the requirements of both the Kansas Long–Arm Statute, K.S.A. § 60–308(b)(2), and the Fourteenth Amendment. Plaintiff counsels that defendant's alleged tortious acts, occurring outside Kansas, meet the standards of K.S.A. § 60–308(b)(2) because their resulting impact falls within the state. Plaintiff also contends that since its injuries arose from defendant's specific actions, those actions are sufficient to establish specific jurisdiction. Moreover, plaintiff alleges that defendant has purposefully availed himself of the privilege of conducting activities within Kansas.

Finally, plaintiff argues that the assertion of personal jurisdiction over defendant comports with notions of fair play and substantial justice. Plaintiff cites *Key Industries, Inc. v.*

*O'Doski, Sellers & Clark*, 872 F.Supp. 858, 864 (D.Kan.1994), in which the court stated that Kansas has an interest in protecting its citizens from torts committed by non-residents. Furthermore, plaintiff avers that defendant has not shown that he would suffer any increased burden if forced to litigate in the District of Kansas.

In a diversity action, the Court determines whether it has personal jurisdiction over a nonresident defendant under Kansas law. *See Dazey Corp. v. Wolfman*, 948 F.Supp. 969, 971; *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1988). In analyzing defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court applies a two-part test. First, it determines if defendant's conduct falls within one of the provisions of the Kansas Long–Arm Statute, K.S.A. § 60–308(b).[1] Second, it examines whether defendant had sufficient minimum contacts with Kansas "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990).

### A. Statutory Analysis

Defendant does not deny that his alleged actions fall within the reach of the Kansas Long–Arm Statute, and the Court finds that it authorizes the exercise of jurisdiction in this case. K.S.A. § 60–308(b)(2) subjects a party to the jurisdiction of the State of Kansas for the "commission of a tortious act within this state." Kansas interprets the term "tortious act" broadly, covering injuries that result from tortious acts committed outside the state. *See Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir.1990). Defendant allegedly interfered with a Kansas contract through his directives and a letter mailed into Kansas.[2] That tortious interfer-

---

**1.** Under the Kansas Long–Arm Statute, "any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts." K.S.A. § 60–308(b).

**2.** Defendant complains that to the extent Litton's affidavit purports to prove that interference, it constitutes inadmissible hearsay. We need not

ence allegedly caused Omaha Paper to breach its contractual obligations and caused plaintiff to sustain losses and injury in Kansas. The Court therefore concludes that for jurisdictional purposes, defendant's action constitutes the commission of a tortious act within the state. *See id.*

## B. Constitutional Analysis

In the second inquiry, the Court focuses on the due process requirements necessary to establish specific jurisdiction since plaintiff avers that its injury is a direct result of defendant's actions. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir.1996). The Tenth Circuit Court of Appeals relies on a three-prong test in determining whether to assert specific jurisdiction. The test provides that:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Taylor*, at 432; *Rambo v. American S. Ins. Co.*, 839 F.2d at 1419.

## 1. Purposeful Availment

■ Defendant specifically addresses the first prong of the due process test, claiming that he has not purposefully availed himself of the privilege of conducting business in the forum. Although he offers no counter-affidavit, defendant claims that plaintiff's complaint and affidavit do not establish the requisite prima facie showing which is necessary for the Court to assert personal jurisdiction.

Defendant cites *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted), in which the Supreme Court stated that some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum. Defendant urges the Court to follow *Biederman v. Schnader, Harrison, Siegal & Lewis*, 765 F.Supp. 1057 (D.Kan.1991), and find that he did not purposefully avail himself of the privilege of conducting business within Kansas.[3] Defendant argues that the Court should not assert personal jurisdiction because he had fewer contacts with Kansas than did defendant in *Biederman.*

Plaintiff contends that defendant purposefully availed himself of the privilege of conducting business in Kansas several times by notifying plaintiff of its C.O.D. status by letter dated October 10, 1997; and by participating in contract negotiations in Kansas on October 31, 1996. Plaintiff cites *Cal Caulfield and Co. v. Colonial Nursing Homes, Inc.*, 642 F.Supp. 777 (D.Kan.1986), in which the court asserted jurisdiction over an out-of-state defendant who alleged tortious interference with a Kansas contract. The court found that although the parties' relationship centered around only one contract, there were sufficient ties with Kansas to evince a continuing relationship. Plaintiff also contends that defendant misconstrues *Biederman* in an attempt to establish a blanket proposition that telephone calls and letters are insufficient to convey jurisdiction. Plaintiff notes that in *Biederman,* the court stated that although telephone calls and letters do not ordinarily establish personal jurisdiction, in some cases they may provide sufficient contacts for the exercise of personal jurisdic-

---

reach such arguments, and others raised in defendant's motion to strike. If defendant is correct and the affidavit is disregarded, the Court still assumes that the facts in plaintiff's complaint are true to the extent they are not controverted by defendant's affidavits and resolves factual contradictions in plaintiff's favor. Defendant has made our task easier by failing to submit such affidavits.

3. In *Biederman* the court refused to assert jurisdiction over a Pennsylvania law firm which a Kansas plaintiff solicited. Although defendant's contacts with Kansas included brief visits during discovery, letters sent to Kansas, checks received from Kansas and telephone calls, the court found that defendant did not have substantial connection with the forum.

tion if they form a substantial connection with the forum. *Id.* at 1061 n. 4.

The Tenth Circuit has held that the Court must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether defendant purposefully established minimum contacts within the state. *See Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995); *Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233, 1237 (10th Cir.1990). The Court's analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. *Rambo,* 839 F.2d at 1420. Sufficient minimum contact generally requires affirmative conduct by the defendant, *id.,* and as long as it creates a substantial connection with the forum, even a single act can support jurisdiction. *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174.

In this case defendant established contacts with Kansas (1) during contract negotiations on October 31, 1996; (2) by mailing a letter dated October 10, 1997, in which he notified plaintiff of its COD status; and (3) by directing his sons to breach a contract with a Kansas resident. These allegations, supplemented by affidavit, demonstrate defendant's interference with a Kansas contract.

In order to find that defendant's contacts create a substantial connection with Kansas, the court must determine that defendant contemplated the consequences of his actions. As Omaha's past president and current chairman of the board, defendant is not an ordinary employee with minimal influence over Omaha's business strategies and direction. Rather, defendant holds a position of significant authority. Defendant's presence at the contract negotiations and his mailed correspondence with plaintiff establish that he was aware of the relationship between Maverick and Omaha Paper and that he should have known that his interference would have repercussions in Kansas. The Court finds therefore that his alleged actions are substantially connected to, and sufficiently establish minimum contacts with, Kansas.

### 2. Arising Out of Forum Related Activity

Next, the Court must determine whether a nexus exists between defendant's forum-related contacts and plaintiff's cause of action. *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Plaintiff argues that defendant's contacts with Kansas are precisely the actions alleged in plaintiff's complaint and affidavit. Defendant, maintaining that he did not purposefully avail himself of the privilege of conducting business in Kansas, offers no contradicting position.

The Court finds that defendant's limited contact with the forum prompted this lawsuit. Plaintiff's claim that defendant tortiously interfered with its contract clearly arises out of the actions alleged and establishes minimum contacts with Kansas. The allegations that defendant directed his sons to breach a Kansas contract and informed plaintiff of its COD status by a letter to Kansas, prompted plaintiff to include him in this lawsuit. This determination, however, is not dispositive. The Court must consider the quality of defendant's contacts to determine whether the assertion of personal jurisdiction over defendant violates notions of "fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086 (10th Cir.1998)(citing *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174.)

### 3. Reasonableness

In determining whether exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice the Court considers (1) the burden on defendant,(2) the forum state's interest in resolving the dispute, (3) plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings,* 149 F.3d at 1095–96; *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026. The strength of these factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id.* Analyzing these factors in relation to defendant's

contacts, the Court concludes that the assertion of personal jurisdiction over defendant in the District of Kansas does not violate due process.

### a. Burden on Defendant

Recently, in *OMI Holdings*, the Tenth Circuit conveyed the importance of analyzing the burden on defendant:

> While not dispositive, the burden on the defendant of litigating a case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. This factor is of special significance because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous.

149 F.3d at 1096. Defendant does not argue and the Court does not find that litigating in Kansas would impose an undue burden. Defendant does not maintain offices or reside in Kansas, but he lives in Omaha, Nebraska, which is approximately 200 miles from Kansas City. Although a jury will likely decide the claims against defendant under Kansas law, it is substantially similar to Nebraska law.[4] The relative close proximity of the forum to defendant's residence coupled with the similarity of the states' laws convinces the Court that litigating in Kansas imposes no significant burden on defendant.

### b. Forum State's Interest

The second factor of the reasonableness inquiry invites the Court to examine Kansas' interest in adjudicating this action. The Supreme Court recognizes that states have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors, *Burger King*, 471 U.S. at 483, 105 S.Ct. 2174. A state also acquires an interest when resolution of the dispute requires a general application of its law. *See Asahi*, 480 U.S. at 115, 107 S.Ct. 1026. This case includes both a Kansas plaintiff and a dispute that requires application of Kansas law. Therefore this factor clearly weighs in favor of plaintiff.

### c. Plaintiff's Interest in Convenient and Effective Relief

In analyzing the third factor, the Court must determine whether plaintiff may receive convenient and effective relief in another forum. This factor is of great importance in cases where plaintiff's chance of recovery is diminished if the Court fails to assert jurisdiction. The law of the alternate forum and plaintiff's burden in bringing this action in that forum are essential to the inquiry. *OMI Holdings*, 149 F.3d at 1096–97.

Kansas is a more convenient forum for plaintiff to bring this action because plaintiff's additional claims will be decided here. If the Court decides not to assert jurisdiction, plaintiff must either litigate his claims concurrently in Kansas and Nebraska, or delay the adjudication of this claim. Although forcing plaintiff to litigate in Nebraska poses no foreseeable threat to plaintiff's chance of recovery or its ability to maintain suit, Kansas is clearly the forum that offers plaintiff the most effective and convenient relief.

---

**4.** A federal court sitting in diversity jurisdiction applies the choice of law provisions of the forum state, which in this case is Kansas. *See Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 798 n. 1 (10th Cir.1988). "Because the defendants' claim sounds in tort, the court must look to Kansas' general tort conflicts rule to determine what substantive law governs." *St. Paul Furniture Mfg. Co. v. Bergman*, 935 F.Supp. 1180, 1187 (D.Kan.1996). In Kansas, the law of the state in which the tort occurs controls. *See Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (Kan.1985). "Under this rule, the tort is deemed to have occurred where the wrong was felt." *St. Paul Furniture*, 935 F.Supp. at 1187.

Under Kansas law, the elements essential to recovery for tortious interference with a contract are(1) the contract;(2) the wrongdoer's knowledge thereof;(3) his or her intentional procurement of its breach;(4) the absence of justification; and (5) damages resulting therefrom. *DP-Tek, Inc. v. AT & T Global Info. Solutions Co.*, 891 F.Supp. 1510, 1516 (D.Kan.1995), *aff'd*, 100 F.3d 828 (10th Cir.1996).

The Nebraska Supreme Court has held that the elements of tortious interference with a contract are(1) the existence of a valid business relationship or expectancy,(2) knowledge by the interferer of the relationship or expectancy,(3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274, 278–79 (Neb.1995).

### d. Efficient Resolution of Controversies

The fourth reasonableness factor asks whether Kansas is the most efficient place to litigate this suit. The Court must take into account where the wrong underlying the lawsuit occurred, the location of witness, which forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. This analysis clearly weighs in plaintiff's favor. The alleged wrong occurred in Kansas, *see Dazey Corp. v. Wolfman,* 948 F.Supp. 969, 972–73 (D.Kan.1996)(tort that causes injury in Kansas is deemed to have occurred in Kansas), and Kansas law applies. *See infra* note 3. Furthermore, since jurisdiction is proper with respect to the remainder of plaintiffs claims, the Court must assert jurisdiction to prevent piecemeal litigation. Finally, the Court must look at the location of the witnesses. Although, the parties have not finalized their witness lists, the Court finds that Kansas is as suitable a location as Nebraska. Judging by the deposition list the witnesses will likely be Maverick employees, Omaha Paper employees, and representatives of franchises with whom both companies have conducted business. Although defendant's witnesses will likely come from Nebraska and states other than Kansas the burden imposed on them is no greater than it would be on plaintiff's witnesses if the parties litigated in Nebraska. Any excess burden that defendant's witnesses face is minimal relative to the number advantages in efficiency that Kansas offers.

### e. Interest in Furthering Fundamental Social Policies

The final factor the Court must consider is whether the exercise of jurisdiction by Kansas affects the substantive social policy interest of other states or foreign nations. *See Asahi,* 480 U.S. at 115, 107 S.Ct. 1026. As this case does not involve residents of a foreign nation, the Court's inquiry is brief. Although Nebraska certainly has an interest in litigation involving its residents, the Court finds no compelling reason it should not assert jurisdiction. As with cases involving a foreign nation, a possible conflict with a state's sovereignty is not dispositive because if given controlling weight, it would always

prevent suit against a resident of another state. *See OMI Holdings,* 149 F.3d at 1097–98.

The Supreme Court stated that as technological progress has increased the flow of commerce between the States, the need for jurisdiction over nonresidents has undergone a similar increase; at the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. *Hanson v. Denckla,* 357 U.S. 235, 250–51, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Court is mindful that "the Due Process Clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In this case, however, defendant has sufficient ties with Kansas such that the exercise of jurisdiction does not violate due process. Furthermore, the Court is compelled by the Tenth Circuit's recent pronouncement that a strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts. *OMI Holdings,* 149 F.3d at 1092. Although plaintiff makes a prima facie showing of jurisdiction, eventually plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial hearing or at trial. Until the Court holds such hearing, plaintiff's prima facie showing suffices.

**IT IS THEREFORE ORDERED** that *Defendant David Powell's Motion to Dismiss* (Doc. # 9), filed June 5, 1998 and his *Motion to Strike Affidavit of Ron Litton* (Doc. # 21), filed July 22, 1998 be and hereby are overruled.