**GRAPHIC TECHNOLOGIES, INC., Plaintiff,**

v.

**PITNEY BOWES INC. and Monarch Marking Systems, Inc., Defendants.**

**Civil Action No. 97–2040–GTV.**

United States District Court, D. Kansas.

March 12, 1998.

Douglas M. Weems, Angela D. Gupta, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO, for Graphic Technology Inc.

Mark Moedritzer, Joseph G. Matye, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Pitney Bowes, Inc.

Irvin V. Belzer, Robert J. Hoffman, R. Jeffrey Harris, Bryan Cave· L.L.P., Kansas City, MO, for Monarch Marking Systems, Inc.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

Plaintiff Graphic Technologies, Inc. (Graphic) brings this action claiming that defendants Pitney Bowes Inc. (Pitney Bowes) and Monarch Marking Systems, Inc. (Monarch), formerly a wholly owned subsidiary of Pitney Bowes, fraudulently or negligently misrepresented facts in a stock purchase agreement. The agreement covered the sale of all stock in Data Documents Systems, Inc. (Data Systems), a wholly owned subsidiary of Monarch and Pitney Bowes. Plaintiff asserts claims of fraudulent misrepresentation, negligent misrepresentation, and misrepresentation in a sales transaction. Plaintiff also asserts claims for declaratory judgment, rescission, and reformation.[1] The case is before the court on the following motions:

---

1. The court previously dismissed plaintiff's claims of breach of contract and for reformation

(1) Defendants' motions (Doc. 76, 81) for summary judgment;

(2) Plaintiff's motion (Doc. 79) for partial summary judgment; and

(3) Plaintiff's motion (Doc. 117) for leave to amend the complaint.

Because both defendants seek summary judgment on all claims and advance essentially the same arguments in support of their motions, the court will address the motions collectively. For the reasons set forth below, defendants' motions are granted with respect to the claim of misrepresentation in a sales transaction, denied as moot with respect to the claim for declaratory judgment, and denied with respect to the remaining claims. Plaintiff's motion for partial summary judgment is denied as moot and plaintiff's motion for leave to amend the complaint is denied.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

In January 1990, plaintiff entered into a stock purchase transaction with defendants to acquire all of the outstanding stock in Data Documents Systems, Inc. (Data Systems). The parties closed on the stock purchase transaction on March 9, 1990. Prior to the closing date, defendants had made no representations regarding the status of Data Systems' contracts with third parties. Section 4.20 of the stock purchase agreement contained defendants' representations that Data Systems was not in default on any contracts set forth in Schedule 4.20. Schedule 4.20 listed the two license agreements discussed herein. In Section 8.1 of the agreement, the parties agreed that all representations contained in the agreement were true and correct as of the closing date of the stock purchase transaction. The agreement also included the following provision:

12.6 *Entire Agreement; Amendments and Waivers.* This Agreement, together with all exhibits and the Schedules hereto,

based on mutual mistake. *See Graphic Tech., Inc. v. Pitney Bowes Inc.,* 968 F.Supp. 602

and the Confidentiality Agreement, constitute the entire agreement among the parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. At the closing, Carole St. Mark, chairperson of Monarch and Data Systems and a representative of Pitney Bowes, signed a certification that all representations and warranties contained in the agreement were true and correct as of the March 9, 1990 closing date.

Included among the contracts that defendants represented were not in default were license agreements Data Systems had negotiated with Image Data Systems, Ltd. (IDS) and Davis & Henderson, Ltd. (D & H). Data Systems previously had granted a software license to IDS and D & H for exclusive use of certain software in the United Kingdom and Canada, respectively, in exchange for royalties. Neither license agreement specifically described the software licensed.

A few days before closing the deal with Graphic, Pitney Bowes sought Graphic's approval, as a prospective purchaser, for Data Systems to grant Pitney Bowes a nonexclusive worldwide license to certain software that it had previously been using without a license at plants in Hong Kong and Dayton, Ohio. Graphic did not know that such software was the same software exclusively licensed to IDS and D & H, and defendants did not disclose that information. Defendants deny that they knew that the same software was exclusively licensed to IDS and D & H. Graphic alleges that it consented to the grant of the license to Pitney Bowes without knowledge or notice that Data Systems had exclusively licensed the software to IDS and D & H, relying on defendants' representations in the stock purchase agreement. On March 9, 1990, shortly before closing the Graphic transaction, Data Systems executed a license agreement granting Pitney Bowes the nonexclusive, worldwide right to use the software, including the right to grant a sublicense to its subsidiaries and affiliates. The same day, Pitney Bowes

(D.Kan.1997).

granted a sublicense to Monarch, which was its subsidiary at the time. Graphic contends that the act of granting the license and sublicense to defendants caused the IDS and D & H license agreements to become in default and, thus, certain stock purchase agreement provisions were misrepresentations.

Additional facts will be provided as necessary.

## II. SUMMARY JUDGMENT MOTIONS

### A. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* 477 U.S. at 251–52.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### B. Negligent and/or Fraudulent Misrepresentation.

A fundamental prerequisite to any misrepresentation claim is an untrue statement of material fact. *Eckholt v. American Bus. Info., Inc.,* 873 F.Supp. 510, 517–18 (D.Kan. 1994). Plaintiff offers evidence that defendants represented in the stock purchase agreement that Data Systems was not in default on any contracts when, in fact, Data Systems was in default under the license agreements. Defendants assert that plaintiff cannot prove that defendants made an untrue statement.

Plaintiff's second amended complaint alleges that:

> At all times during the negotiations of the Stock Purchase Agreement, and at the closing of the [Data Systems] stock purchase transaction, Pitney Bowes and Monarch specifically represented to [Graphic] that there was no default by [Data Systems] on any of its current license agreements, including the Original IDS License Agreement and the D & H License Agreement.

The complaint incorporated Section 4.20 of the stock purchase agreement, which contained the following representations:

> Each of the contracts, agreements and leases set forth ... is a valid and binding obligation of [Data Systems] ... and is a valid and binding obligation of the other party thereto, and ... is enforceable in all respects in accordance with its terms.... Neither [Data Systems] nor ... any other party thereto, is in default with respect to any contract, agreement or lease set forth and no event has occurred which, through the passage of time or giving of notice, or both, would constitute a default thereunder or would cause the acceleration of any obligation of any party thereto.

Defendants allege that none of Data Systems' agreements were in default at the time of closing because each agreement stated it was not in default until an arbitrator or judicial authority determined that the contract was in default. Defendants argue that

because the complaint pleads only a representation of "no default," plaintiff is precluded from arguing that the "valid and binding obligation," "enforceable in all respects," and "no event has occurred" clauses are false representations. Such an interpretation flies in the face of the liberal pleading principles of Fed.R.Civ.P. 8.

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see also Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir.1980) ("[F]actual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests, thereby enabling a defendant to prepare a responsive pleading."). Moreover, the pleadings must be "simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). Plaintiff's complaint put defendants on notice that the allegedly false representations were those found in Section 4.20 of the agreement.

Defendants assert that the fraudulent misrepresentation claim is governed by the heightened pleading standards of Rule 9(b) and thus, even if the negligent misrepresentation claim is construed liberally, the fraud claim must be limited to the specific language in the complaint. Defendants misconstrue Rule 9(b)'s requirements. The Tenth Circuit has stated that:

> Rule 9(b) requires only the identification of the circumstances constituting fraud. . . . The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." . . . The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . [.]" Simply stated, a complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) (citations omitted). "[T]o meet the requirements of Rule 9(b) a complaint need not recite the evidence or plead detailed evidentiary matter. Similarly, Rule 9(b) does not require

particularity to the degree so as to supplant general discovery methods." *Sunbird Air Serv., Inc. v. Beech Aircraft Corp.*, 789 F.Supp. 364, 366 (D.Kan.1992).

Defendants submit that plaintiff should have quoted each individual phrase of the contract provision that constitutes a fraudulent misrepresentation. The court disagrees. Plaintiff satisfied the Rule 9(b) requirements. Plaintiff properly alleged negligent and fraudulent misrepresentation claims based on the representations in Section 4.20 relating to the validity and enforceability of the Data Systems' contracts.

Defendants rely on narrow language in the license agreements' definition of default, stating that "a default will not be deemed to have occurred until a determination either by arbitration or judicially shall have been made." Defendants assert that because, as of the closing date, there had been no determination by a judge or arbitrator that Data Systems was in default of the IDS license agreement, the representation was not false and plaintiff's claim must fail.

The court rejects defendants' argument because it takes the language out of context. The full definition of default in the license agreements was the following:

> *Default* —the failure of a party to fulfill its obligations hereunder[.] *In the event of a dispute between the parties as to whether a party has failed to fulfill its obligations* a default will not be deemed to have occurred until a determination either by arbitration or judicially shall have been made[.] It shall not be a default if a party is unable to fulfill its obligations by reason of technological limitations beyond its control[.] (italics added).

It is clear from the full language of the provision that the definition of default is contained in the first clause—"the failure of a party to fulfill its obligations hereunder." Moreover, no judicial or arbitrator's determination is necessary because the dispute here is not between the parties to the license agreements. Plaintiff has offered sufficient evidence that Data Systems violated the exclusive licenses by granting licenses to defendants and that Data Systems failed to fulfill

its obligations under the license agreements as of March 9, 1990. Accordingly, there is a genuine issue of material fact whether defendants made an untrue statement of material fact.

Defendants also argue that the stock purchase agreement precludes plaintiff's tort claims. Defendants assert that because the only representations concerning the default status of the license agreements were made in the stock purchase agreement, and defendants warranted the truth of the representations in that agreement, the contract defines the duties of the parties with respect to the representations and a tort claim does not lie. The court disagrees.

■ A party may not bring a tort claim based on the same facts alleged in its contract claim if the contract specifically defines the duties of the parties. *Ford Motor Credit Co. v. Suburban Ford,* 237 Kan. 195, 204, 699 P.2d 992, 999 (1985) (adopting rationale of *Isler v. Texas Oil & Gas Corp.,* 749 F.2d 22, 23–24 (10th Cir.1984)). Such a claim is prohibited because a party may not base a tort claim upon a contractually created duty. *See Isler,* 749 F.2d at 24. A tort claim is based on a contractual duty only if there is no independent tort duty upon which to rely. *See Hess Oil Virgin Islands Corp. v. UOP, Inc.,* 861 F.2d 1197, 1202 (10th Cir.1988) (tort liability if duty independent of contract). "A party may be liable in tort for breaching an independent duty towards another, even where the relationship creating such a duty originates in the parties' contract." *Id.* at 1202. If there is no independent tort duty here, plaintiff's claims are precluded.

■ "To be actionable, a misrepresentation must relate to a pre-existing or present fact; statements or promises about future occurrences are not actionable." *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1157 (10th Cir.1994) (citing *Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 659, 360 P.2d 23 (1961)). The tort duty underlying a negligent misrepresentation claim is breached only upon a misrepresentation of pre-existing or present fact. Such a misrepresentation is absent if the statement regards only future events. Thus, if a misrepresentation claim is predicated on a contractual representation regarding future oc-currences, the claim necessarily relies on a contractually created duty. Allowing a negligent misrepresentation claim to arise from failure to perform a contractual obligation would provide a tort remedy in a contract action without requiring a plaintiff to prove fraudulent intent. *Gerhardt,* 261 Kan. at 1018, 934 P.2d 976. Such a claim would arise in every breach of contract action. *Id.* 261 Kan. at 1020–21, 934 P.2d 976.

In each of the cases cited by defendants, the negligent misrepresentation claim was based upon a promise to perform under the contract, *see Isler,* 749 F.2d at 24 (promise to make rental payments and give notice before ceasing payments); *Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1461 (D.Kan.1995) (promises to not make or accept new orders and to use reasonable efforts), or a failure to disclose after the contract created a duty to disclose. *See Smith v. Hawkeye–Sec. Ins. Co.,* 842 F.Supp. 1373, 1375 (D.Kan.1994) (failure to advise plaintiff of his contractual rights under insurance policy). In fact, in every Kansas case precluding a negligent misrepresentation claim, the claim has arisen from a contractual obligation or promise. *See, e.g., Woodmont Corp. v. Rockwood Ctr. Partnership,* 852 F.Supp. 948, 956 (D.Kan.1994) (promise to go ahead with project); *Gerhardt,* 261 Kan. at 1018, 934 P.2d 976 (promise to be bound by committee's decision). All of these cases relied on a contractual duty because there was no independent tort duty.

■ Plaintiff's misrepresentation claims are based on representations set forth in the contract, but the duty owed to plaintiff does not arise from promises contained in the contract. The duty arises from the general tort duty to refrain from misrepresentation of material present or preexisting facts. That duty is independent of the contract. Moreover, the warranty provision in the stock purchase agreement does not preclude an independent tort action. *See Atkinson v. Orkin Exterminating Co.,* 5 Kan.App.2d 739, 744–45, 625 P.2d 505 (allowing independent tort action despite existence of warranty claim with respect to the same conduct), *aff'd,* 230 Kan. 277, 634 P.2d 1071 (1981). The creation of the bargained-for contractual

warranty duty does not obviate the common-law tort duty. *See id.* Other Kansas cases have also recognized a tort cause of action if an independent duty existed despite the existence of a parallel contractual duty. *See Hess Oil,* 861 F.2d at 1201–02; *Nature's Share, Inc. v. Kutter Prods., Inc.,* 752 F.Supp. 371, 386 (D.Kan.1990); *Equitable Life Leasing Corp. v. Abbick,* 243 Kan. 513, 516, 757 P.2d 304 (1988); *Fox v. Wilson,* 211 Kan. 563, 576, 507 P.2d 252 (1973); *Atkinson,* 5 Kan.App.2d at 744–45, 625 P.2d 505. Accordingly, summary judgment is denied on plaintiff's fraudulent and negligent misrepresentation claims.

## C. Misrepresentation in a Sales Transaction

■ Plaintiff asserts a separate claim of misrepresentation in a sales transaction, requesting damages resulting from the misrepresentations. Defendants argue that no such claim is separately cognizable under Kansas law. It is unclear from the complaint whether plaintiff is pleading an innocent misrepresentation claim or a second fraudulent misrepresentation claim. Kansas courts recognize a claim for innocent misrepresentation as grounds for equitable relief only, but not for damages. *Green Constr. Co. v. Kansas Power & Light Co.,* 1 F.3d 1005, 1010 (10th Cir.1993) (citing *Topinka v. American Eagle Fire Ins. Co.,* 167 Kan. 181, 205 P.2d 991 (1949)). To the extent plaintiff seeks damages for innocent misrepresentation, the claim is dismissed. To the extent plaintiff pleads a second misrepresentation claim based on fraud, it is subsumed by the fraudulent misrepresentation claim. Accordingly, summary judgment is granted on the claim of misrepresentation in a sales transaction.

## D. Rescission and/or Reformation

■ Plaintiff asserts claims for rescission and reformation of the license and sublicense granted to defendants by Data Systems, relying primarily on the same false representations underlying the fraudulent and negligent representation claims. Plaintiff seeks reformation of the license and sublicense agreements to eliminate the conflict between them and the IDS and D & H exclusive licenses. Plaintiff alternatively argues that rescission or reformation is warranted because Data Systems had nothing to convey to defendants when the licenses were granted.

Defendants argue that summary judgment is appropriate on the rescission and reformation claims because plaintiff cannot prove a false representation. The court rejects that argument for the reasons previously discussed. Moreover, even if plaintiff could not prove a false representation, its rescission claim would survive on the issue of whether Data Systems had an interest to convey. Accordingly, summary judgment is denied with respect to plaintiff's reformation and rescission claims.

## E. Declaratory Judgment

■ Plaintiff requests a declaratory judgment that the Pitney Bowes license and the Monarch sublicense are null and void. Plaintiff asserts the same rationale that it offers in support of its rescission and reformation claims. Plaintiff additionally contends that the Monarch sublicense is null and void because Pitney Bowes could only grant a sublicense to its subsidiaries and Monarch is no longer its subsidiary. Defendants move for summary judgment, asserting that plaintiff cannot prove any false representation. Plaintiff moves for summary judgment that Monarch's sublicense is null and void because it is no longer a subsidiary. Both motions are denied as moot because the court declines to exercise jurisdiction over the declaratory judgment claim.

The Declaratory Judgment Act provides in part: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act authorizes federal courts to declare the legal rights and obligations of adversaries, but does not impose a duty to do so. *Kunkel v. Continental Casualty Co.,* 866 F.2d 1269, 1273 (10th Cir.1989). "Whether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court." *Id.* (citing *Alabama State Fed'n of Labor v. McAdo-*

*ry*, 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)).

The declaratory action in this case would not serve a useful purpose in clarifying the legal relations at issue. *See State Farm Fire & Casualty Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir.1994). Although cognizant that a court may hear a declaratory action involving the same issues as a coercive action in the same case, *see* Fed.R.Civ.P. 57, the court finds that such a circumstance weighs against the exercise of jurisdiction. The survival of plaintiff's legal and equitable claims regarding the same issues involved in the declaratory action renders the declaratory action superfluous. *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir.1997) (discussing co-existence of damages claim and declaratory action based on same issues in context of mootness doctrine). Here, the only issue in the declaratory judgment action that is not involved in plaintiff's other legal and equitable claims is whether Monarch's sublicense is automatically revoked because Monarch is no longer a subsidiary.

The court declines to exercise jurisdiction over the subsidiary issue because the issue is not properly before the court. In its Second Amended Complaint, plaintiff alleged that "[t]he Pitney Bowes license and Monarch sublicense were granted as a result of either fraud or mutual mistake" and that "[Data Systems] had nothing left to convey to Pitney Bowes with respect to the [territories included in the exclusive licensing agreements.]" Plaintiff argues that it also plead that Monarch is no longer a subsidiary in its declaratory judgment action through its general incorporation of prior allegations. Plaintiff included elsewhere in its complaint a general allegation stating that "Monarch, which is no longer a Pitney Bowes subsidiary, has refused to state that it has no rights under the Pitney Bowes license." The incorporation of this allegation does not constitute a sufficient allegation that Monarch's sublicense is null and void because Monarch is no longer a subsidiary of Pitney Bowes. Accordingly, the court declines to exercise jurisdiction of the declaratory judgment action.

## III. MOTION TO AMEND THE COMPLAINT

█ Plaintiff requests leave to file a third amended complaint. In compliance with Local Rule 15.1, plaintiff proposed the following changes to the complaint:

(1) Adding allegations that defendants represented that Data Systems' contracts "are valid and binding obligations which are enforceable in all respects according to their terms."

(2) Adding allegations that defendants' officers and employees made statements to induce plaintiff to allow Data Systems to grant defendants a license.

(3) Adding allegations that defendants knew that plaintiff relied on defendants' statements.

(4) Adding allegations that Monarch continued to use the software after representing to plaintiff that it had ceased using the software.

Plaintiff first argues that the court should modify the scheduling order to allow plaintiff's amendments to the complaint. "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge...." Fed.R.Civ.P. 16(b). To establish good cause, "[t]he party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines." *Deghand v. Wal–Mart Stores, Inc.,* 904 F.Supp. 1218, 1221 (D.Kan.1995). The court finds that plaintiff has not shown good cause to modify the scheduling order. Plaintiff knew of the alleged misrepresentations prior to bringing suit. Moreover, plaintiff has not shown that it could not have met the scheduled deadlines.

"The decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion." *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991) (citing Fed.R.Civ.P. 15(a)). Untimeliness alone is sufficient reason to deny leave to amend the complaint, especially if plaintiff fails to offer an explanation for the delay. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365–66 (10th Cir.1993). "Furthermore, where the party seeking amendment knows

**1182**

or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.* at 1366. Plaintiff's motion was untimely. Moreover, plaintiff knew or should have known of the facts upon which its proposed amendments are based. Accordingly, plaintiff's motion to amend is denied.

Denial of the amendment will not preclude the introduction of evidence in this litigation. Amendment is unnecessary. As stated previously in this memorandum, the court does not subscribe to defendants' narrow construction of the complaint. Each of the specific allegations sought to be added was either adequately plead in the second amended complaint or is an unnecessary allegation in the complaint.

IT IS, THEREFORE, BY THE COURT ORDERED that the claim for declaratory judgment is dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiff's motion (Doc. 79) for partial summary judgment is denied as moot.

IT IS FURTHER ORDERED that defendants' motions (Docs. 76, 81) for summary judgment are granted with respect to the claim of misrepresentation in a sales transaction, denied as moot with respect to the claim for declaratory judgment, and denied with respect to the remaining claims.

IT IS FURTHER ORDERED that plaintiff's motion (Doc. 117) for leave to amend the complaint is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**