UNIVERSAL PREMIUM
ACCEPTANCE CORPORATION,
Plaintiff,

v.

OXFORD BANK & TRUST, An Illinois
Banking Corporation, Defendant.

No. CIV.A. 02–2448–KHV.

United States District Court,
D. Kansas.

Aug. 18, 2003.

Dennis M. Clyde, Clyde & Wood, L.L.C., Overland Park, KS, for Universal Premium Acceptance Corp.

John W. Cowden, Ryan O'Dell, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, for Oxford Bank & Trust.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Universal Premium Acceptance Corporation ("Universal") sues Oxford Bank & Trust ("Oxford Bank") for negligent and fraudulent misrepresentation and breach of warranty. This matter comes before the Court on *Defendant Oxford Bank & Trust's [Second] Motion To Dismiss Plaintiff's Amended Complaint* (Doc. # 35) filed March 21, 2003. Specifically, Oxford Bank seeks dismissal on account of lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and failure to plead fraud with particularity. For reasons set forth below, the Court sustains defendant's motion to dismiss for failure to plead fraud with particularity, and otherwise overrules defendant's motion.

### Factual Background

Universal's amended complaint, which is premised solely on diversity jurisdiction, alleges the following facts: Universal is a Missouri corporation with its principal place of business in Lenexa, Kansas. Oxford Bank is an Illinois corporation located in Addison, Illinois. On April 29, 1998, Universal and Oxford Bank executed a written Stock Purchase Agreement ("the Agreement"), in which Oxford Bank agreed to sell to Universal all outstanding shares of its subsidiary, Oxford Premium Finance, Inc. ("Oxford Premium"). Section 14 of the Agreement stated that it should be construed in accordance with the laws of Missouri. In addition, in Section 12.4, Oxford Bank and Universal non-exclusively agreed to jurisdiction and venue in state or federal court in Missouri. The Agreement represented that since December 31, 1997, Oxford Premium had maintained an allowance for loan losses that was adequate to provide for potential losses without a need for future reserve increases, *Agreement* § 3.10(b). The Agreement also provided that Oxford Bank would indemnify Universal for misrepresentation or breach of warranty relating to loan losses which exceeded the loss reserve indicated on the Oxford Premium financial statement dated March 31, 1998 ($79,589) plus $50,000. *Agreement* § 12.5(b). The transaction closed on May 29, 1998 in Kansas City, Missouri.

Universal claims that Oxford Bank breached the Agreement when it failed to indemnify Universal for loss exceeding the loan loss reserve, and that Oxford Bank is therefore liable for $129,589 for breach of contract. Universal also claims that in the Agreement, Oxford Bank negligently or fraudulently misrepresented that since De-

cember 31, 1997, the Oxford Premium loan loss reserve had been adequately maintained.

Oxford Bank filed its initial motion to dismiss on January 17, 2003. *Defendant Oxford Bank & Trust's Motion To Dismiss* (Doc. # 21). In response, Universal submitted affidavit testimony and written evidence of the following facts: When the parties entered the Agreement, the Colis family owned and controlled Oxford Premium,[1] Oxford Financial Corporation and Euclid Insurance. Oxford Financial Corporation is the parent company and owner of Oxford Bank. *See* O'Neil Aff., ¶ 7.

**Universal has its financial headquarters in Lenexa, Kansas, where Timothy P. O'Neil ("O'Neil"), its president, is located.** In 1996 Universal and Oxford Bank attempted to negotiate a stock purchase agreement for Oxford Premium. That attempt ended without an agreement. *See* O'Neil Aff., ¶ 16.

In 1998, Universal re-initiated negotiations with Oxford Bank. The parties primarily negotiated by telephone, facsimile and mail. On January 15, 1998, O'Neil met George Colis at Oxford Bank offices in Illinois. The following day, George Colis mailed a confidentiality agreement to O'Neil's office in Kansas. Before O'Neil signed and returned the confidentiality agreement, he and George Colis discussed potential terms and conditions by telephone between Kansas and Illinois. In February of 1998, George Colis asked John Glavan, Oxford Premium's CEO, president and treasurer, to mail to O'Neil's office in Kansas current financial statements and information for Oxford Premium. Glavan mailed information which in-

cluded the representations regarding the Oxford Premium equity and potential for loan losses. *Id.*

The Agreement which the parties eventually executed contained express and conditional terms. It expressly required Oxford Bank to give Universal the articles of incorporation and minute books for Oxford Premium. Agreement § 3.4. The Agreement also provided that Oxford Bank would send Universal the Oxford Premium financial statements for 1995, 1996 and 1997. Agreement § 3.8. The Agreement further required the parties to send notices or other communications, including written notices of termination, to Oxford Bank in Illinois and to Universal in Kansas. Agreement § 9(a)-(b) and § 13.

Under the Agreement, the parties' obligation to close was subject to satisfaction of conditional obligations. Agreement § 7.0 and § 8.0. The Agreement conditionally required Universal to maintain a contractual relationship with Euclid Insurance Services, Inc. ("Euclid"), Agreement § 7.12, the single largest customer of Oxford Premium. O'Neil Aff., ¶ 23. The Agreement required Oxford Premium and Euclid to enter a separate contract under which, for a period of three years, Euclid would exclusively arrange customer premium financing through Oxford Premium. *Id.* That separate contract specifically stated that after the closing between Oxford Bank and Universal, Euclid would send all notices under its contract with Oxford Premium to Universal headquarters in Kansas. *Id.*

The Agreement conditionally required Universal to pay the $17,844,126 line of

---

**1.** In 1984 Oxford Premium incorporated as Security Funding Corporation. Peter Colis was its sole shareholder. Its three directors were Peter Colis and his sons George Colis and John Colis.

In 1988 John Glavan replaced John Colis as director and became Oxford Premium's CEO, president and treasurer. George Colis became Oxford Premium's secretary and chairman of the board. They retained their positions until the Agreement closed.

credit which Oxford Premium owed Oxford Bank. Agreement § 8.11. As part of this Agreement, Universal gave Oxford Bank a demand promissory note. *Id.* O'Neil signed the note in his office in Kansas. Oxford Bank acquired collateral for that loan by having O'Neil execute a stock power in Kansas. The parent company of Universal, Transfinancial Holdings, Inc., also guaranteed that loan by executing a written guarantee that Oxford Bank faxed to the Transfinancial office in Lenexa, Kansas. The day before closing, George Colis faxed to O'Neil, in Kansas, a document which listed the payoff balance for the Oxford Premium line of credit. Colis also faxed to Kansas certain instructions for the funds that O'Neil would have to pay at closing.

The Agreement conditionally required Glavan to execute a written non-competition and non-solicitation contract with Oxford Premium. Agreement § 7.4. The Agreement directed all Oxford Premium officers and directors to send signed resignations to Universal. Agreement § 7.3. Despite the resignation condition, the Agreement also required Universal or Oxford Premium to enter into employment contracts with two Oxford Premium officers, Nancy Piper and Sheila Minitti. Agreement § 7.5. In an effort to fulfill the contingency, both officers traveled to the Universal office in Kansas to discuss potential employment agreements. O'Neil Aff., ¶ 22.

The transaction closed on May 29, 1998, in Kansas City, Missouri. The Agreement required that at closing, Oxford Bank deliver certificates representing record ownership of the shares. The Agreement required Universal to deliver the purchase price by wire transfer. Agreement § 2.2–2.3. George Colis and O'Neil were not physically present at the closing. O'Neil Aff., ¶ 27. Oxford Bank and Universal understood that both parties would per-form their responsibilities under the Agreement from their respective offices. *Id.* Thus, from his office in Kansas, O'Neil caused Universal to pay all funds due Oxford Bank at closing.

## *Analysis*

### I. Personal Jurisdiction—Rule 12(b)(2)

Oxford Bank asserts that this Court lacks personal jurisdiction under the Kansas long-arm statute because Oxford Bank does not transact business in Kansas, the Agreement did not provide for performance in Kansas and no performance occurred in Kansas. Oxford Bank also asserts that exercise of personal jurisdiction would violate due process. Plaintiff contends that the Court has personal jurisdiction because Oxford Bank transacts business in Kansas, the parties entered a contract which has been partially performed in Kansas, and because Oxford Bank engaged in tortious conduct which caused plaintiff economic injury in Kansas.

▮▮▮ The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), based on affidavits and other written material. *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984). If the Court chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995); *Behagen,* 744 F.2d at 733. Of course, "plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res.,* 887 F.2d 1371, 1376 (10th Cir.1989) (citing *Becker v. Angle,* 165 F.2d 140, 141 (C.C.A.10.1947)). A plaintiff's conclusory allegations that defendant has minimum contacts is insufficient to establish person-

al jurisdiction, *id.*, but the Court resolves all factual disputes in favor of plaintiff. *Id.*

■ The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendant's conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60–308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. *Volt Delta Res. Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendant must have sufficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. *See Equifax Serv., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990); *see World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

A. *The Kansas Long–Arm Statute*

■ Plaintiff asserts that personal jurisdiction against defendant is proper under subsections (1), (2) and (5) of the Kansas long-arm statute, K.S.A. § 60–308(b), which provides in pertinent part that

Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person . . . to jurisdiction of the courts of this state as to any of these acts: . . .

(1) transaction of any business within the state . . .

(2) commission of a tortious act within this state . . .

(5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state . . .

As noted, Oxford Bank asserts that the Court lacks personal jurisdiction because it does not transact business in Kansas, the Agreement did not provide for performance in Kansas and no performance occurred in Kansas. Oxford Bank also asserts that the exercise of personal jurisdiction would violate due process.

Section 60–308(b)(5) provides that a person submits to jurisdiction of the courts in Kansas by entering into an express or implied contract with a resident of Kansas to be performed in whole or in part by either party in Kansas. In this case, the parties agree that Oxford Bank entered into a written contract with Universal, a resident of Kansas. Defendant denies that any part of the contract was to be performed in Kansas.

Section 60–308(b)(5) states that jurisdiction will lie if the contract is to be performed "in whole or in part" within the forum. The Tenth Circuit has held that payment of funds due under a contract to a plaintiff's offices in Kansas establishes that the parties agreed that some part of the contract would be performed in Kansas, thereby satisfying K.S.A. § 60–308(b)(5). *See Continental Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir.1982); *see also Rusty Eck Ford–Mercury Corp. of Leavenworth v. Am. Custom Coachworks, Ltd.*, 184 F.Supp.2d 1138, 1141 (D.Kan.2002) (long arm jurisdiction under Section 60–308(b)(5) where plaintiff resided in Kansas and contract required that defendants make payments to plaintiff's offices in Kansas).

In this case, Universal has offered evidence that the Agreement required Oxford Bank to send contract notices to Universal in Kansas. Further, to the extent that it anticipated payment from Universal in

Kansas, Oxford Bank expected partial performance of the contract in Kansas. The fact that Oxford Bank anticipated payment from Kansas is evident because it requested the demand promissory note from O'Neil in Kansas and faxed to O'Neil's office in Kansas a document which stated the payment required at closing. Accordingly, Universal has made a prima facie showing that the Court has personal jurisdiction over Oxford Bank under K.S.A. § 60–308(b)(5).

### B. *Due Process*

■ The second aspect of the test is whether this Court's exercise of jurisdiction satisfies constitutional due process requirements. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining whether assertion of jurisdiction satisfies the constitution's due process requirements, the Court applies a three-prong analysis which considers (1) defendant's contacts with the state, (2) purposeful availment of privileges in the state, and (3) reasonableness of the Court exercising jurisdiction over defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 & n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988).

■ First, the defendant must have minimum contacts with the forum state—a sufficient relationship such that the Court's jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *World–Wide Volkswagen*, 444 U.S. at 293, 100 S.Ct. 559 (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (citations omitted)). In judging the sufficiency of defendant's contacts in a contractual dispute, the Court evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [to] determin[e] whether the de-fendant purposefully established minimum contacts with the forum." *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174. These contacts must be such that defendant purposefully availed itself of the privilege of conducting the activities within the state. *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). These contracts must relate to plaintiff's cause of action. The purposeful availment requirement ensures a defendant "will not be haled into a jurisdiction as a sole result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 474–75, 105 S.Ct. 2174.

■ The Court's exercise of jurisdiction over the defendant must be reasonable. *Int'l Shoe*, 326 U.S. at 317, 66 S.Ct. 154. In determining reasonableness, the Court considers several factors, including the burden on defendant, the interest of the forum state, plaintiff's interest in obtaining relief and the judicial system's interest in obtaining efficient resolution of disputes and in furthering substantive social policies. *Asahi Metal Ind. Co. v. Superior Ct. of Ca.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The Court must also examine the nature and quality of defendant's contacts with the forum state, to determine if defendant can be reasonably required to defend suit in the forum in which it is brought. *Kulko v. Sup.Ct. of Ca.*, 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

■ In this case, Oxford Bank conducted extensive negotiations and then entered into a contract with a corporation which had financial headquarters in Kansas. The parties' course of dealings involved telephone calls to and from Kansas, mail to and from Kansas, and facsimiles to Kansas. The Agreement required Oxford Bank to mail required notices to Universal offices in Kansas. The Oxford Bank con-

tacts with Kansas are sufficient to establish that exercise of jurisdiction in Kansas does not offend fair play and substantial justice.

Oxford Bank argues that its only contacts with Kansas were incidental contacts (such as isolated telephone calls during negotiations) and that such contacts do not establish that it purposefully availed itself of conducting activities in Kansas. In making this argument, Oxford Bank relies upon *Biederman v. Schnader, Harrison, Siegal & Lewis,* 765 F.Supp. 1057, 1059 (D.Kan.1991), where this Court found that an attorney's brief visits to Kansas to attend depositions which had been noticed by another party did not constitute purposeful availment, and that assertion of jurisdiction would offend traditional notions of fair play and substantial justice. By contrast, in this case, Oxford Bank negotiated and entered a contract with Universal by mailing and faxing documents to Universal in Kansas, and contractually agreed to send notices to Universal in Kansas. In *Cont'l Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982), the Tenth Circuit recognized that "modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications." Further, although defendant correctly points out that the Agreement includes Missouri choice of law and non-exclusive jurisdiction provisions, such provisions alone do not prevent exercise of jurisdiction by a Court outside Missouri. *See Hass & Wilkerson, Inc. v. Berwyn Ins. Group, Inc.,* 1994 WL 566938 at *12 (D.Kan. Sept.21, 1994). The Court finds that Oxford Bank purposefully availed itself of the benefits of Kansas law through bilateral activity with Universal.

 Finally, the exercise of personal jurisdiction by a Kansas court is reasonable. Universal did not sue in a distant forum, and Oxford Bank will bear only a slight burden from litigation in this state. Additionally, Kansas has an interest in governing contracts entered by corporations headquartered in this state. Oxford Bank could reasonably foresee that if a dispute arose, a court in Kansas could be called upon to exercise jurisdiction over the parties to this contract. *See World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Given these facts, the exercise of personal jurisdiction over Oxford Bank is consistent with the constitutional requirements of due process.[2]

## II. Venue

 Fed.R.Civ.P. 12(b)(3) governs motions for dismissal based on improper venue. "Venue refers to the place where a lawsuit should be brought." *Clemons v. Speigel,* No. 94–4092–SAC, 1994 732630, at *1 (D.Kan. Dec.27, 1994) (citing *Executive Aircraft Consulting, Inc. v. Fin. Corp.,* No. 91–1357–B, 1992 WL 402032, at *2 (D.Kan. Dec.1, 1992)). Venue must be proper for each claim pleaded. *Clemons,* 1994 WL 732630, at *1 (citing *Hansen–Moor Assocs., Inc. v. Allied B/J Trust,* No. 91–4192–C, 1992 WL 190714, at *3 (D.Kan. July 17, 1992)). Once challenged, plaintiff must show that venue is proper in the forum state. *Jet–Pro Co. v. Sweet Mfg. Co., Inc.,* No. 93–4059–SAC, 1993 WL 463512, at *8 (D.Kan. Oct.27, 1993) (citing *Hanson–Moor,* 1992 WL 190714, at *3). Essentially, a court's discretion over procedures governing motions to dismiss for improper venue is the same as when considering motions to dismiss for lack of

---

**2.** Because the long-arm statute provides that the Court has jurisdiction over "any cause of action arising from" the conduct that gives rise to personal jurisdiction, the Court's jurisdiction over defendant extends to plaintiff's tort claim as well.

personal jurisdiction. *Id.* (citing *Hansen–Moor*, 1992 WL 190714, at *4).

■ Oxford Bank claims that venue is improper because it is not a resident of Kansas and is not subject to personal jurisdiction in Kansas, and a substantial part of the events giving rise to Universal's claim occurred outside Kansas. Plaintiff argues that venue in the District of Kansas is proper under 28 U.S.C. § 1391(a) and (c).

Under 28 U.S.C. § 1391(a)(1), in a civil action where subject matter jurisdiction is founded only on diversity of citizenship, the action can be brought in a judicial district where any defendant resides, if all defendants reside in the same state. Section 1391(c) states that "a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

As noted, the Court has personal jurisdiction over Oxford Bank. Oxford Bank is therefore deemed a resident of Kansas. Since federal jurisdiction is solely based on diversity of citizenship, the case may be brought in any district where defendant resides. As a result, venue in the District of Kansas is proper under 28 U.S.C. § 1391(a).

**III. Failure To State A Claim On Which Relief Can Be Granted**

■ A court should not grant a Rule 12(b)(6) motion unless "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Ass'd Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). When ruling on a motion to dismiss for failure to state a claim, the Court accepts the veracity of all well-pleaded facts in plaintiff's complaint. The Court views the facts and all reasonable inferences in the light most favorable to plaintiff. Rule 12(b)(6), Fed.R.Civ.P.;

*See Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail but whether plaintiff is entitled to offer evidence to support its claims. Courts must liberally construe the pleadings. *Gas–A–Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973). While precise statements of each claims' elements are unnecessary, plaintiff must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

■ Oxford Bank asserts that plaintiff's purported claim for negligent misrepresentation should be dismissed under Rule 12(b)(6). Universal's amended complaint alleges that Oxford Bank knew or should have known that the reserve amount represented on the financial statements and in the Agreement was inadequate, and that Universal relied to its detriment on that misrepresentation about the adequacy of Premium's loss reserve.

■ Oxford Bank argues plaintiff's negligent misrepresentation claim is not actionable because the loss reserve statement is (1) contractually derived, (2) concerns future occurrences and (3) is a claim for which a contractual remedy was provided. The Bank contends that Universal "merely dressed up its breach of contract claim in different clothing and renamed it a misrepresentation claim." *Woodmont Corp. v. Rockwood Ctr. P'ship*, 852 F.Supp. 948, 956 (D.Kan.1994). When parties contemplate a remedy in the event of a breach of contract, the bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences. *Id.* Nevertheless, a party may be liable in tort for breaching an indepen-

dent duty toward another, even where the relationship creating such a duty originates in the parties' contract. A tort claim must be independent of the contract claim and a misrepresentation claim must "relate to preexisting or present fact; statements, or promises about only future occurrences are not actionable." *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F.Supp. 1174, 1179–1180 (D.Kan.1998) (citing *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir.1994).) A tort claim's independence and survival depends on whether the claim is based on a contractually defined duty.

In *Graphic Techs.*, plaintiff agreed to buy stock in a software company, but later sued for negligent misrepresentation or fraud, alleging that the agreement misrepresented an exclusive software licensing agreement. The seller asserted that the stock purchase agreement precluded plaintiff's claims because it defined the parties' duties and warranted the truth of representation. This Court disagreed, finding that defendant had a duty—independent of the contract—to refrain from misrepresenting material facts. *See Graphic Techs.*, 998 F.Supp. at 1179–80.

 Likewise, here, Universal has an actionable claim for negligent misrepresentation. The tort claim is independent of contractually defined duties and is based on statements of existing or preexisting facts. Universal's claims are based on contractual representations, but the duty of Oxford Bank to Universal does not arise from promises contained in the contract. *See id.* at 1179. The law imposed on Oxford Bank a general tort duty to act in an ordinary and prudent manner during the negotiations, the execution of the Agreement and the closing of the transaction, while representing the financial standing of Oxford Premium. Further, the tort claim alleges that Oxford Bank misrepresented facts which pre-dated the Agreement—specifically, that the loss reserve was adequate. Although the misrepresentation may not have been discerned at that time, the alleged actions of Oxford Bank in negligently supplying financial information did not depend on future occurrences. Finally, the warranty provision in the Agreement does not preclude an independent tort action for misrepresentation. *See id.* at 1179 (creation of bargained-for contractual warranty duty does not obviate tort action); *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604, 876 P.2d 609, 616 (1994) (defendants who commit negligent misrepresentation are liable for pecuniary loss caused by justifiable reliance upon their information).

## IV. Pleading Fraud with Particularity

 Oxford Bank asserts that Universal has not pleaded fraud with sufficient particularity under Rule 9(b), Fed.R.Civ.P. Rule 9(b) requires "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake [to] be stated with particularity." The rule enables a defending party to prepare an effective response to charges of fraud, and to protect itself from unfounded charges of wrongdoing which might injure its reputation and good will. *Full Faith Church of Love West, Inc. v. Hoover Treated Wood Prods., Inc.*, 224 F.Supp.2d 1285, 1287 (D.Kan.2002); *see NL Indus., Inc. v. Gulf & W. Indus., Inc.*, 650 F.Supp. 1115, 1129–30 (D.Kan.1986).

 To the extent that Universal asserts a claim of negligent misrepresentation, Rule 9(b) does not apply. *See Shaffer v. Eden* 209 F.R.D. 460, 464 (D.Kan.2002) (citing *Black & Veatch Int'l Co. v. Wartsila NSD N. Am.*, No. 97–2556–GTV, 1998 WL 264738, at *3 (D.Kan. May 21, 1998) (Rule 9(b) does not apply to negligent representation claims)). Instead, the requirements of notice pleadings govern negligent misrepresentation. *Id.* Claims for relief shall set forth a "short and plain statement

of the claim showing that the pleader is entitled to relief." Rule 8, Fed.R.Civ.P. The Court finds that Universal has sufficiently pled a claim for *negligent* misrepresentation. Whether Universal has sufficiently pleaded its claim for *intentional* misrepresentation, e.g., fraud, requires further analysis under Rule 9(b).

■ To plead a fraud claim, the complainant must describe the circumstances of the fraud, *i.e.,* the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by complainant's reliance on the false representation. Stated differently, Rule 9(b) requires plaintiff to set forth the "who, what, where, and when" of the alleged fraud. *Nal II, Ltd. v. Tonkin,* 705 F.Supp. 522, 525–26 (D.Kan. 1989).

■ Oxford Bank correctly points out that Universal's amended complaint merely alleges that Oxford Bank misrepresented the adequacy of the allowance for loan losses, and does not plead the identity of the person who made the alleged misrepresentation or the time and place of the misrepresentation. Universal's fraud claim does not comply with Rule 9(b). The Court therefore sustains Oxford Bank's motion to dismiss Universal's fraudulent misrepresentation claim, for failure to plead fraud with sufficient particularity under Fed. R. Civ P. 9(b).

**IT IS THEREFORE ORDERED** that *Defendant Oxford Bank & Trust's [Second] Motion To Dismiss Plaintiff's Amended Complaint* (Doc. # 35) filed March 21, 2003 be and hereby is **SUSTAINED** as to plaintiff's claim for fraudulent misrepresentation. Defendant's motion is otherwise **OVERRULED**.